THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES WATKINS (Impleaded), Defendant-Appellant.

(No. 70-116;

Second District—January 31, 1972.

Theodore Gottfried, of Chicago, Ralph Ruebner, of Elgin, and Prentiss H. Marshall, of Champaign, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, for the People.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The defendant James Watkins, together with one John Leon Dismuke, was indicted and tried for Armed Robbery. The defendant, James Watkins, separately appeals from a judgment of conviction after a jury verdict and from the sentence of 2-7 years in the penitentiary which was imposed.

Defendant argues that he was not proven guilty beyond a reasonable doubt; that he was deprived of a fair trial when the trial court denied his motion for severance and forced him to stand trial with the co-defendant John Leon Dismuke. He also argues that the prosecutor's argument, together with the jury's observation of him during the course of the trial in a barred security cell deprived him of a fair trial.

Defendant argues that his conviction rests on the uncorroborated identification of one witness, the victim of the robbery Kaye Abolins. He argues inconsistencies in her testimony as to her description of the relative sizes of the robbers. He urges that the record shows a substantial possibility that Mrs. Abolins identified Watkins as a man in a photograph shown to her at the time of her first identification and that her in-court identifica-

tion was of the man in the photograph rather than the armed robber.

Mrs. Abolins' testimony was that shortly after midnight on June 19th, 1969 the doorbell rang at the Colonial Inn Motel in Rockford where she was employed as a clerk and a bookkeeper. She unlocked the door and a man walked in, followed within seconds by a second man who carried a gun and wore a sheer nylon over his face. Both men walked behind the customer service desk and one told her to get into the back room. The man she described as the defendant Watkins took money from the cash drawer. Mrs. Abolins lifted up a charge plate apparatus and the man she described as Watkins took the bills from underneath. At the men's direction Mrs. Abolins went into the back room and got down on the floor in a position she described as "more or less kneeling, just sitting on my knees", as the men continued to search. Then the doorbell rang again and two potential customers came in. Mrs. Abolins testified that the robbers told the men to get into the back room and lie on their stomachs. Mrs. Abolins looked up when one of the robbers, whom she identified as Dismuke, asked if there was a back way out and she pointed to it. The two robbers left and at that point a third person previously unseen by Mrs. Abolins walked through the television room and out the back door. Mrs. Abolins made a positive in-court identification of both Dismuke and the defendant Watkins. She testified that at the time of the crime she had a full front view of the defendant Watkins when she was 12 to 18 inches or possibly closer to him; that Watkins was within 12 inches to 3 feet from her at least 4 times; that there was nothing covering Watkins face; and that both Dismuke and Watkins were actually in her view over a period of 4 to 5 minutes in lighted rooms.

Mrs. Abolins testified that in her first statements to the officers she made some errors in her description of the robbers. She testified that she told the police that Dismuke was the shorter of the men and weighed in the neighborhood of 190 to 200 pounds, which was the way it appeared to her from the way he was dressed at the time, but that the defendant Dismuke who stood up in court, she would estimate, weighed from 135 to 145 pounds. She also said in court that she was mistaken when she first said that Dismuke was the taller of the two.

Mrs. Abolins testified that she viewed the defendant Watkins in a line-up held in Peoria on July 9th, 1969 (This was a separate line-up from the one held in Rockford on July 8th, 1969, in which Mrs. Abolins had identified the co-defendant, Dismuke. Neither defendant was at the line-up in which the other was present). Mrs. Abolins testified that she identified the defendant Watkins as one of the five people in the line-up. She said that the police previously had shown her photographs im-

mediately after the crime but that she did not pick out anyone. She testified that two weeks before she went to Peoria the police showed her five to seven photographs of different persons and asked her if any of the men were the ones involved and that she answered, "yes", and pointed to one of the pictures (Watkins), but was not told the identity of the person she picked. She also testified that when she saw Watkins in the line-up in Peoria she believed this was the same person whose photograph she had seen earlier, but her identification was not based upon having seen the pictures in the past.

The defendant Watkins testified at the trial and denied any participation in the robbery. He said he had traveled with his stepfather and four other persons from Peoria to Detroit, Michigan, to visit his stepfather's relatives on June 13th, 1969. There was corroborating testimony as to the trip. In addition, there were three witnesses who testified that they saw the defendant in Detroit on the nights of Thursday, June 19th and Friday, June 20th, 1969.

■■ We are required to scrutinize the totality of the circumstances surrounding the photographic identification of the defendant by the single eye witness to determine whether the pre-trial procedures were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. (*Simmons v. United States* (1968), 19 L.Ed. 2d 1247, 1253.) We think this record satisfies the requirement of *Simmons.* The witness had adequate opportunity to view the offender at the scene of the armed robbery. The witness was shown between five and seven photographs from which she picked a photograph of the defendant, and this was done within a few weeks after the robbery while the witness's memory would be presumed to be reasonably fresh. There is no evidence of any suggestions made to the witness. The in-court identification of the defendant by the witness was positive and credible. Under the total circumstances, we believe that the identification procedure was not such as to give rise to a very substantial likelihood of irreparable misidentification. (See *People v. Martin* (1970), 47 Ill.2d 331, 337; *People v. Henderson* (1971), (Ill.App.), 273 N.E.2d 244, 246.) We think that the jury could properly weigh the testimony of Mrs. Abolins against defendant's alibi evidence and determine that Mrs. Abolins testimony was more credible. Defendant has cited *People v. Gardner* (1966), 35 Ill.2d 564, for the proposition that where the identification of a defendant is weak and an alibi is not effectively impeached by other circumstances, there may not be the abiding conviction of defendant's guilt necessary to support a guilty finding. We do not agree that under the circumstances of this case the identification of the defendant is weak. Under the entire record

we have an abiding conviction of defendant's guilt beyond a reasonable doubt.

■■■ Defendant next argues that the failure of the trial court to grant his motion for a severance was an abuse of discretion which denied him a fair trial. Granting a severance and separate trial of jointly indicted defendants is within the trial court's discretion, not to be arbitrarily exercised. (*People v. Lindsay* (1952), 412 Ill. 472, 481; *People v. Earl* (1966), 34 Ill.2d 11, 13.) The test to be applied is whether the defense of one defendant is so antagonistic to the defense of the other that a severance is necessary to insure a fair trial. *People v. Minnecci* (1936), 362 Ill. 541, 545.

■■ The defendant argued in his motion for severance that it would be part of his defense to actively place the blame for the crime on Dismuke, his co-defendant. He claims that the failure of the trial court to grant the defendant a separate trial made it impossible for him to implement this strategy without prejudicing his own case. He suggests that he had no prior criminal record, whereas Dismuke had a prior criminal record. He suggests that therefore Dismuke could not testify on his own behalf and he could neither call him as a witness nor comment on his failure to testify as he could have done had he and Dismuke been tried separately.

There is no assurance that Dismuke would have been willing to waive his constitutional privilege against self-incrimination if called as a witness at a separate trial. (See *Gorin v. United States,* (1st Cir. 1963), 313 F.2d 641, 646.) We do not think that the strategic approach that Watkins would be able to call Dismuke as a witness and then comment on his failure to testify, is a factor which shows that the court abused its discretion. Defendant cites *United States v. Echeles* (7th Cir. 1965), 352 F.2d 892, 897. However, in *Echeles,* it appeared that the co-defendant had made statements in open court exculpatory of Echles and the fact that the co-defendant could not be called to the stand for the purpose of getting the same or similar statement holding Echeles blameless into evidence, was the particular circumstance which led the court of appeals to conclude that severance should have been granted. Here, there was no showing that Dismuke could exculpate this defendant. We are unable to say that the defenses of the co-defendants were so basically antagonistic that to try them together would deprive this defendant of a fair trial. In our view, the trial court did not err in exercising its discretion in favor of denying Watkins' motion for a severance. See *People v. Canaday* (1971), (Ill.2d), 275 N.E.2d 356, 361, 362.

Defendant has also argued that the prosecution's closing argument was prejudicial and deprived him of a fair trial; and that he was further prejudiced and denied a fair trial and equal protection of the law

because he had been viewed by the jury in a barred security cell as the jury passed into the courtroom after several recesses. We have disposed of both of these claims of error contrary to the defendant's position in *People v. Dismuke* (1972), Ill.App.

The judgment below is affirmed.

Judgment affirmed.

GUILD and MORAN, JJ., concur.