THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN RICE, Defendant-Appellant.

First District (1st Division)   No. 1—92—1308

Opinion filed December 30, 1996.—Rehearing denied February 19, 1997.

Frederick F. Cohn, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Susan Schierl, and Jon J. Walters, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

Following a joint jury trial, defendant, Kevin Rice, was found guilty of possession of a controlled substance with intent to distribute and sentenced to 20 years' imprisonment; his codefendant, Raymond Pugh, was found guilty of possession of a controlled substance. Defendant Rice appealed, alleging six separate trial errors each of which he contended required reversal of his conviction and remand for a new trial. This court reversed his conviction based upon the first issue presented, namely, that the trial court erred in refusing to admit into evidence codefendant Pugh's exculpatory statement made at a pretrial suppression hearing. *People v. Rice*, 247 Ill. App. 3d 415, 617 N.E.2d 360 (1993). Having determined that reversal was warranted on the first issue, we declined to address the remaining five issues presented for review. *Rice*, 247 Ill. App. 3d at 419, 617 N.E.2d at 364. Thereafter, the Illinois Supreme Court reversed this court's decision, reinstated the conviction, and remanded the case to this court for consideration of the remaining five issues. *People v. Rice*, 166 Ill. 2d 35, 651 N.E.2d 1083 (1995). We affirm.

The facts of this case are fully set forth in both the prior opinion of this court, *Rice*, 247 Ill. App. 3d at 416, 617 N.E.2d at 361-62, and the opinion of the Illinois Supreme Court, *Rice*, 166 Ill. 2d at 37-38, 651 N.E.2d at 1084-85, and will not be repeated here.

OPINION

I

The first issue we are asked to consider on remand is whether defendant was denied due process when the court, in its opening remarks, advised the jury:

"If you become convinced beyond a reasonable doubt from all the evidence in the case that *either* of the defendants is guilty as charged in the information, it will be your duty to find *them* guilty." (Emphasis added.)

Defendant contends this opening remark was so prejudicial as to require a new trial, no matter what subsequently took place. Defendant reasons that the remark improperly instructed the jury that if it found the evidence sufficient to convict *either* defendant it should convict *both* defendants and subsequent curative instructions did not cure the error but, rather, were in direct conflict with the court's opening remark and thus served only to confuse the jury. We disagree.

■ Instructions in criminal cases should not be viewed in isolation but, rather, should be considered as a whole. *People v. Hester*, 131 Ill. 2d 91, 98, 544 N.E.2d 797, 801 (1989); *People v. Terry*, 99 Ill. 2d 508, 516, 460 N.E.2d 746, 750 (1984). Moreover, if a trial court awkwardly phrases an instruction that does not otherwise contain a substantial defect (*People v. Gallardo*, 112 Ill. App. 3d 764, 773, 445 N.E.2d 1213, 1220 (1983)), or gives an instruction which, standing alone, may mislead the jury (*People v. Flowers*, 138 Ill. 2d 218, 233, 561 N.E.2d 674, 680 (1990)), other instructions may explain the inaccuracy, remove the error, or render it harmless.

■ Here, although the trial judge utilized a plural object pronoun, *i.e.*, "them," where a singular object pronoun, *i.e.,* "him" (or even more definitively a pointing pronoun combined with an antecedent noun, *e.g.*, "that defendant"), was appropriate, the comment does not rise to the level of a substantial defect. Such usage is sufficiently common in spoken English that we believe the meaning is generally understood.

Even assuming the remark, standing alone, may have misled the jury, it was prefaced by the trial court's explanation that its opening remarks were not the jury's "final and complete instructions," and followed by an admonition to the jury to "remember throughout the trial that each defendant is entitled to have his case decided on the evidence and the law which applies to him, that is you must give separate consideration to each defendant." The court further admonished the jury that "[a]ny evidence which is limited to one defendant should not be considered by you as to any other defendant." These additional remarks were reiterated at the close of evidence when the trial court formally instructed the jury on the law and the presumption of innocence. The jury returned different verdicts for the two defendants.

In light of the foregoing, we find defendant's argument that the jury in this case understood "them" in this context to mean "both". to be disingenuous. When viewed in context, and taking into consideration the fact that the jury returned different verdicts for the two defendants, we find the complained-of remark was neither confusing nor amounted to a substantial defect requiring a new trial.

## II

■ The second issue we are asked to address on remand is whether the heroin contained in a brown paper bag located on the person of Rice's codefendant, Pugh, was seized in violation of Rice's right to be free from unreasonable searches and seizures and should have been suppressed. Defendant contends that, based upon the officers' version of events, *i.e.*, that Rice handed the bag to Pugh, defendant had not

abandoned the bag and therefore retained standing to file a motion to suppress. In support of his argument, defendant cites two out-of-jurisdiction cases: *In re B.K.C.*, 413 A.2d 894 (D.C. Ct. App. 1980), and *State v. Cooke*, 54 N.C. App. 33, 282 S.E.2d 800 (1981). Defendant's reliance is misplaced.

Standing under the fourth amendment accrues only to individuals with a reasonable expectation of privacy in the area searched or property seized. *People v. Johnson*, 114 Ill. 2d 170, 191, 499 N.E.2d 1355 (1986). Moreover, the burden is on defendant to establish standing and show that the complained-of search was unreasonable. *People v. Neal*, 109 Ill. 2d 216, 218, 486 N.E.2d 898 (1985).

In *In re B.K.C.*, the defendant never ceased to claim ownership of the seized briefcase and no dispute existed at the motion to suppress evidence that the briefcase belonged to the defendant. *In re B.K.C.*, 413 A.2d at 900. In *State v. Cooke*, the defendant's name was on the suitcase and the codefendant informed the police that the suitcase belonged to the defendant. *State v. Cooke*, 54 N.C. App. at 41, 282 S.E.2d at 808. Thus, in both *In re B.K.C.* and *State v. Cooke*, the evidence clearly demonstrated the defendants' respective possessory interests in the suitcase searched. Here, in contrast, the defendant claimed no possessory interest in the paper bag but, rather, attempted to rely upon the statements of police to establish standing. Moreover, Pugh claimed to have placed the brown paper bag containing heroin inside his pants approximately two hours before the police stopped Rice for speeding. Because defendant failed to claim a possessory interest in the bag (*People v. Dowery*, 174 Ill. App. 3d 239, 245, 528 N.E.2d 214 (1988)), or establish a reasonable expectation of privacy in Pugh's pants (*People v. Casas*, 234 Ill. App. 3d 847, 601 N.E.2d 798 (1992)), we find that defendant lacks standing to challenge the constitutionality of the search.

■ Even assuming, *arguendo*, that defendant has standing to challenge the search of Pugh, a reviewing court will not disturb a trial court's ruling on a motion to suppress evidence unless it is manifestly erroneous. *People v. Neal*, 109 Ill. 2d at 218, 486 N.E.2d at 899. A ruling is manifestly erroneous if it is arbitrary, unreasonable, and not based on the evidence. *People v. Harris*, 220 Ill. App. 3d 848, 860, 580 N.E.2d 1342, 1350 (1991).

Defendant contends that neither an arrest for a minor traffic violation nor the mere fact that a person desires to hide something from the authorities creates a reasonable suspicion, based on articulable facts, that Pugh was armed so as to permit the arresting officers to frisk him. While this may be true, defendant's reliance on *People v. Dotson*, 37 Ill. App. 3d 176, 345 N.E.2d 721 (1976), and *People v.*

*McCarty*, 11 Ill. App. 3d 421, 296 N.E.2d 862 (1973), in support of his argument is nevertheless misplaced as both are distinguishable on their facts.

In *Dotson*, the court found that defendant's behavior of shifting his feet and placing his hands in his pocket, without more, did not justify a frisk because his behavior was entirely consistent with that of an individual attempting to stay warm on a cold winter's day. *Dotson*, 37 Ill. App. 3d at 177. In *McCarty*, the court found that, even assuming a frisk was proper, once the officer had determined that defendant's coat pocket contained only soft objects and not a weapon, he had no right to remove anything therefrom. Here, in contrast, it was not merely Pugh's apparent nervousness, but, rather, the fact that the arresting officer observed Pugh stick a bulky, handgun-sized paper bag in his waistband that would warrant a reasonably prudent person in believing his safety or the safety of others was in danger such that a pat down search was not improper. See generally *People v. Sailor*, 43 Ill. 2d 256, 253 N.E.2d 397 (1969) (weapon may have been passed and concealed in purse such that search was necessary to protect officer from attack). Furthermore, the pat down search revealed that the bag was hard rather than soft to the touch. In light of the foregoing, we find that the officer acted properly when he removed the bag and opened it. We therefore decline to disturb the trial court's ruling denying defendant's motion to suppress as manifestly erroneous. See *People v. Gunsaullus*, 72 Ill. App. 3d 440, 391 N.E.2d 142 (1979).

## III

■ The third issue we are asked to consider on remand is whether defendant was denied due process of law when the trial court failed to instruct the jury on an accountability theory. Defendant argues that because the prosecution proceeded on the theory that Rice was accountable for the actions of Pugh, a proper accountability instruction was "as essential as an instruction on the elements of the offense charged" such that its omission constituted grave error. Defendant cites *People v. Ogunsola*, 87 Ill. 2d 216, 429 N.E.2d 861 (1981), *People v. Jenkins*, 69 Ill. 2d 61, 370 N.E.2d 532 (1977), *People v. Payne*, 194 Ill. App. 3d 238, 550 N.E.2d 1214 (1990), and *People v. Turner*, 179 Ill. App. 3d 510, 534 N.E.2d 179 (1989), in support of his argument.

We find that defendant has waived the issue by failing to object or tender the requested instruction to the trial court. *People v. Young*, 128 Ill. 2d 1, 58, 538 N.E.2d 461, 477 (1989). Moreover, none of the cases cited by defendant even address the need for an accountability

instruction, much less support his argument that one was "as essential as an instruction on the elements of the offense charged" such that its omission constituted grave error. Accordingly, we find that the instruction does not fall within the exception to the waiver rule enunciated by Supreme Court Rule 451(c) (134 Ill. 2d R. 451(c)), which applies only to failure to instruct the jury on elements of the offense, the presumption of innocence, or the burden of proof (*People v. Franklin*, 135 Ill. 2d 78, 103, 552 N.E.2d 743 (1990)).

■ In a related argument, defendant next contends that absent an accountability instruction, the giving of the Illinois Pattern Jury Instruction, Criminal No. 4.16 (3d ed. 1995) (IPI) on joint possession amounted to an impermissible mandatory presumption of possession. The instruction reads, in pertinent part:

"If two or more persons share the immediate and exclusive control or share the intention and power to exercise control over a thing, then each person has possession." IPI Criminal 3d No. 4.16.

On this point, he cites *Sandstrom v. Montana*, 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979), *Engle v. Koehler*, 707 F.2d 241 (6th Cir. 1983), *aff'd*, 466 U.S. 1, 80 L. Ed. 2d 1, 104 S. Ct. 1673 (1983), and *Carella v. California*, 491 U.S. 263, 105 L. Ed. 2d 218, 109 S. Ct. 2419 (1989).

Defendant is in error.

In *Sandstrom*, the trial court instructed the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." *Sandstrom*, 442 U.S. at 513, 61 L. Ed. 2d at 44, 99 S. Ct. at 2453. Likewise, in *Engle*, the trial court instructed that "the law gives us a rule of thumb that a person is presumed to intend the natural consequences of his acts." (Emphasis omitted.) 707 F.2d at 243, *aff'd*, 466 U.S. 1, 80 L. Ed. 2d 1, 104 S. Ct. 1673. And in *Carella*, the trial court had instructed that the "[i]intent to commit theft by fraud is presumed" under certain circumstances. *Carella*, 491 U.S. at 264, 105 L. Ed. 2d at 221, 109 S. Ct. at 2420. The Supreme Court held in all of these cases that these presumptions either shifted the burden of proof to the defendant or denied the jury its rightful authority as finder of fact.

Here, in contrast, the trial judge properly set out the elements of the offense of possession with intent to distribute and instructed the jury on both the defendant's presumption of innocence and the State's burden of proof. At no time did the trial judge use the word "presumption" in his instructions on the elements of the offense of possession with intent to distribute. Accordingly, we find that, when reviewed as a whole, the instructions properly charged the jury with the duty of making its own finding of fact regarding the element of knowing possession.

## IV

■ We are next asked to determine whether the trial court erred when it denied Rice's pretrial motion to sever his trial from that of his codefendant, Pugh. Generally, defendants jointly indicted are to be jointly tried unless fairness to one of them requires a separate trial to avoid prejudice. *People v. Davis*, 254 Ill. App. 3d 651, 661, 626 N.E.2d 1187, 1194 (1993). A motion for severance is to be filed prior to the commencement of trial and must state how the defendant will be prejudiced by a joint trial; mere apprehensions are not enough. 725 ILCS 5/114—8 (West 1994); *People v. Daugherty*, 102 Ill. 2d 533, 541, 468 N.E.2d 969, 972 (1984). In ruling on a severance, the court is to make a prediction about the likelihood of prejudice at trial, taking into account "the papers presented, the arguments of counsel, and any other knowledge of the case developed from the proceedings." 102 Ill. 2d at 541, 468 N.E.2d at 972.

A decision to deny a severance is within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. *People v. Blount*, 220 Ill. App. 3d 732, 739, 580 N.E.2d 1381, 1386 (1991). In evaluating the trial court's decision, the reviewing court will consider only petitions filed by the defendant and matters alleged therein, and not subsequent happenings at trial. *People v. Yonder*, 44 Ill. 2d 376, 386, 256 N.E.2d 321, 327 (1969), *cert. denied sub nom. Guido v. Illinois*, 397 U.S. 975, 25 L. Ed. 2d 270, 90 S. Ct. 1094 (1970). Nonetheless, the trial court has a continuing duty at all stages of trial to grant a severance if prejudice appears. *People v. Clark*, 71 Ill. App. 3d 381, 398, 389 N.E.2d 911, 923 (1979); *cf. Schaffer v. United States*, 362 U.S. 511, 4 L. Ed. 2d 921, 80 S. Ct. 945 (1960) (application of Federal Rules of Criminal Procedure).

■ Applying these principles, we are unable to determine whether defendant's pretrial severance motion was properly denied. Following the supreme court's decision in this case, the record on appeal was discovered missing by the clerk's office. It being unknown how this occurred, the parties were asked to reconstruct the record. An examination of the reconstructed record on appeal and a comparison of its contents with the index to the original record on appeal contained in appellant's brief reveals that neither record contains a copy of defendant's motion, any memoranda of law in support of the motion, a transcript of the hearing on the motion, or a copy of the court's order denying it. This is both a violation of Supreme Court Rule 608(a)(5), which requires that the record on appeal in criminal cases contain "all motions, transcript of motion proceedings, and orders entered thereon" (134 Ill. 2d R. 608(a)(5)), and an omission depriving this court of the necessary tools to determine whether the

trial court abused its discretion (*Yonder*, 44 Ill. 2d at 386, 256 N.E.2d at 327).

However, in light of the trial court's continuing duty to grant a severance if prejudice appears during trial, we review the trial transcript in order to determine whether defendant was prejudiced at trial such that severance was required.

Prejudice requiring severance occurs when (1) codefendants' defenses are antagonistic, as where the trial becomes more of a contest between codefendants than the State and defendants or one protests his innocence while condemning the other (*People v. Braune*, 363 Ill. 551, 556-57, 2 N.E.2d 839, 841-42 (1936)), or (2) statements by codefendant implicating the defendant are admitted but the defendant is unable to cross-examine the codefendant because the former does not testify (*People v. Daugherty*, 102 Ill. 2d at 541, 468 N.E.2d at 973)). However, severance is not required when (1) codefendants' defenses are merely contradictory (*People v. Lovelady*, 221 Ill. App. 3d 829, 836, 582 N.E.2d 1217, 1224 (1991)), (2) the testimony defendant seeks to introduce would be inadmissible hearsay (*People v. Montgomery*, 18 Ill. App. 3d 828, 832-33, 310 N.E.2d 760, 764-65 (1974)), or (3) there is no assurance that codefendant would have been willing to waive his constitutional privilege against self-incrimination if called as a witness at a separate trial (*People v. Watkins*, 3 Ill. App. 3d 560, 564, 278 N.E.2d 156, 159 (1972)).

■ Initially, defendant argues that the codefendants' defenses were antagonistic.We disagree. In order for codefendants' defenses to be deemed antagonistic, there must be actual hostility. *People v. Lovelady*, 221 Ill. App. 3d at 836, 582 N.E.2d at 1224. This requirement is not met where, for example, one defendant claims an alibi defense and the other defendant asserts a reasonable doubt, but at no time do the defendants become rivals or accuse each other. See *People v. Williams*, 196 Ill. App. 3d 851, 860, 554 N.E.2d 1040, 1045-46 (1990).

During trial, both defendants professed ignorance regarding the contents of the paper bag. Rice relied on the defense of reasonable doubt by attacking the credibility of the State's witnesses. Rice's theory of the case was that the police were lying, that they had not seen him hand the brown paper bag containing heroin to Pugh because they could not have seen anything through the closed, tinted automobile windows, and that the State had therefore failed to present any evidence that he had knowledge of the bag's contents. In contrast, Pugh relied on the defense of reasonable doubt by utilizing the credibility of the State's witnesses to his advantage. Pugh's theory of the case was that the arresting officer testified that Rice had just handed him the bag and that, therefore, the State had failed to

present any evidence that he had knowledge of the bag's contents. Thus, although both defendants professed ignorance regarding the contents of the paper bag, neither pointed the finger at the other. Rather, the codefendants in the case at bar, like the codefendants in *Williams*, essentially relied on the defense of reasonable doubt. Accordingly, we find that their defenses were merely contradictory rather than hostile.

In a related argument, defendant contends that because his defense relied upon his ability to examine Pugh regarding Pugh's testimony at an earlier suppression hearing that the brown paper bag containing heroin had been in Pugh's possession for some two hours prior to the arrest, the trial court's refusal to sever the parties' trials deprived Rice of the opportunity to call Pugh as a witness to testify on his behalf. In support of this argument, defendant cites *United States v. Echeles*, 352 F.2d 892 (7th Cir. 1965), which reversed a defendant's conviction and remanded for a new trial under similar circumstances. The court reasoned that a joint trial prevented defendant Echeles from calling a codefendant to the stand for the purpose of eliciting testimony consistent with an earlier in-court statement exculpating defendant. 352 F.2d at 897.

Defendant's reliance on *Echeles* is misplaced. The case has been distinguished or limited no less than seven times just within the Seventh Circuit (see *United States v. Tolliver*, 937 F.2d 1183 (7th Cir. 1991); *United States v. Andrus*, 775 F.2d 825 (7th Cir. 1985); *United States v. Hansen*, 583 F.2d 325 (7th Cir. 1978); *United States v. Isaacs*, 493 F.2d 1124 (7th Cir. 1974); *United States v. Bornstein*, 447 F.2d 742 (7th Cir. 1971); *United States v. Blue*, 440 F.2d 300 (7th Cir. 1971); *United States v. Stanley*, 411 F.2d 514 (7th Cir. 1969)) and is not otherwise binding on Illinois courts. Rather, we find the Illinois Supreme Court's earlier opinion in this case, *People v. Rice*, 166 Ill. 2d 35, 651 N.E.2d 1083 (1995), and *People v. Watkins*, 3 Ill. App. 3d 560, 278 N.E.2d 156 (1972), to be controlling.

Initially we note that the Illinois Supreme Court has already held that Pugh's exculpatory statement at the suppression hearing was not admissible under either the former testimony or the statement against penal interest exception to the hearsay rule. *People v. Rice*, 166 Ill. 2d 35, 651 N.E.2d 1083 (1995). Moreover, it would remain inadmissible hearsay whether or not the court granted severance. *People v. Montgomery*, 18 Ill. App. 3d 828, 832, 310 N.E.2d 760, 764 (1974). Nor was Rice entitled to severance so that he might call Pugh to the stand in an attempt to elicit the same or similar statements holding him blameless. As we held in *People v. Watkins*, 3 Ill. App. 3d 560, 278 N.E.2d 156 (1972), severance need not be granted where

there is no assurance that codefendant would be willing to waive his constitutional privilege against self-incrimination and testify if called as a witness at a separate trial. Here, after the State rested its case, defense counsel called Pugh as a witness. Pugh invoked his fifth amendment privilege against self-incrimination and refused to testify. U.S. Const., amend. V; see also Ill. Const. 1970, art. I, § 10. Thereafter, defendant failed to present the trial court with any assurance that Pugh would testify if the trials were severed. Having so failed to demonstrate to the trial court how he was prejudiced by the joint trial, we find the trial court acted within its discretion when it refused defendant's motion to sever.

## V

We are next asked to determine whether the evidence is sufficient to sustain defendant's conviction for possession with intent to deliver. Defendant argues that because the evidence against him was essentially the same as the evidence against Pugh, it cannot support the inconsistent verdicts of guilty of possession with intent to distribute for Rice where Pugh was found guilty only of possession. Defendant further argues that there is a total absence of sufficient evidence to prove the offense of possession with intent. We disagree.

The slightest difference in evidence can support different verdicts for codefendants. *People v. Jakes*, 207 Ill. App. 3d 762, 767, 566 N.E.2d 422, 426 (1990). In the case at bar, the evidence adduced as to Pugh and Rice was dissimilar in regards to the element of intent to deliver. While codefendant Pugh possessed the heroin at the time of arrest, the State presented evidence that defendant had prior possession of the drugs and had handed them to Pugh. Moreover, defendant, though admittedly unemployed, possessed $1,050 in cash, a beeper, and a car telephone, all items used to facilitate drug transactions. Under these facts, the jury was clearly entitled to find that the element of intent to deliver only applied to defendant. *People v. Witherspoon*, 216 Ill. App. 3d 323, 334, 576 N.E.2d 1030, 1037 (1991).

For all of the foregoing reasons, we affirm.

Affirmed.

HOFFMAN, P.J., and CAHILL, J., concur.