Sixth Division
December 24, 2009

No. 1-08-0655

| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the Circuit Court |
|---|---|---|
| | ) | of Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | 05 CR 18909 |
| | ) | |
| ANGEL MERCADO, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Thomas V. Gainer, Jr., |
| | ) | Judge Presiding |

JUSTICE McBRIDE delivered the opinion of the court:

Following a joint jury trial, defendant Angel Mercado was found guilty of aggravated discharge of a firearm and unlawful use of a weapon by a felon while codefendant Robert Cantoral was acquitted of aggravated discharge of a firearm. Subsequently, the trial court sentenced defendant to concurrent terms of 20 years in prison for aggravated discharge of a weapon and 12 years for unlawful use of a weapon by a felon.

Defendant appeals, arguing that the trial court erred in failing to sever his trial from that of his codefendant because they presented antagonistic defenses and his attorney was ineffective for failing to ensure that defendant was tried separately from his codefendant.

Both defendant and codefendant Cantoral were charged with aggravated discharge of a firearm in relation to a July 2005 shooting. Defendant was also charged with unlawful use of a weapon by a felon. Prior to trial, defendant filed an answer asserting self-defense as an affirmative defense whereas Cantoral filed an answer asserting that the State would be unable to prove him guilty beyond a reasonable doubt. Defendant's attorney filed a motion to sever

defendant's trial from Cantoral's.

At the hearing on defendant's motion, the trial court inquired how Cantoral's anticipated argument that the State could not prove him guilty beyond a reasonable doubt was antagonistic with defendant's affirmative defense of self-defense. Defendant's attorney responded that he could "only speculate" that Cantoral might testify that he had no knowledge and that defendant's actions came as a surprise and this potential testimony would conflict with defendant's testimony that Cantoral had some involvement in the incident. The trial court considered the argument, but denied the motion for severance.

The case proceeded to a jury trial at which a different trial judge presided and the following evidence was presented.

Luis Avilez, Manuel Torres, Santiago Torres and Ivan Villanueva testified that they were occupants in Avilez's car in the early morning hours of July 30, 2005. Avilez was driving, Manuel was in the front passenger seat with Santiago behind him and Villanueva behind Avilez. They were driving into downtown to Chicago to go to some nightclubs. They had just exited the expressway onto Ohio Street and were stopped at a red light when a black sport utility vehicle (SUV) pulled up next to their car.

While at the stoplight near the Rock-n-Roll McDonald's in downtown Chicago, Avilez, Manuel and Santiago testified that the driver of the SUV flashed a gang sign for the Satan Disciples. Avilez, Manuel and Santiago identified codefendant Cantoral as the driver of the SUV. Avilez denied being in a gang, but Manuel and Santiago stated that they were former Latin Kings. In response, Santiago "threw the finger" at the driver by extending his middle finger. Villanueva did not see any hand gestures.

When the light turned green, the SUV accelerated and moved in front of Avilez's car. Avilez testified that the passenger of the SUV leaned out of the window and fired several gunshots at their car. Avilez identified defendant as the shooter. Manuel heard the gunshots from the passenger side of the car and saw the flash of the gun. Santiago and Villanueva heard the gunshots, but did not see from where the shots were fired. Avilez testified that he followed the SUV until he noticed a police car at the next light. He told the officers a person in the SUV had fired shots at them. The police began to follow the SUV and Avilez continued to follow behind the police car.

Sergeant Willaim Bradley testified that he witnessed the shooting. He worked part-time as a security guard for a downtown restaurant, located at Ohio and Wabash. On the night of July 30, 2005, he was sitting in his car after leaving his job when he heard a loud noise which he believed to be a gunshot. He looked up and saw "a dark SUV with a male hanging out pointing a large caliber weapon behind him." Sergeant Bradley observed the man fire two rounds. He identified defendant as the shooter. He called 911 and proceeded to follow the SUV as it turned left onto Wabash. Sergeant Bradley noticed an unmarked squad car and he waved to the car and told the officers that the SUV had fired shots out of the car. Those officers got in front of Sergeant Bradley and eventually curbed the SUV on Ontario, near Rush Street. Sergeant Bradley requested an officer to return to Ohio Street with him to look for shell casings. One casing was recovered and inventoried.

Officers Christopher Dingle and Jose Torres testified that Sergeant Bradley flagged them down and informed them that people in the SUV were shooting. They began to follow the SUV and activated their emergency lights on the front of the car. The SUV pulled over and Cantoral

3

and defendant were arrested. Officer Dingle searched the vehicle and found a gun inside a storage compartment in the rear passenger side of the SUV. The officers also patted down the occupants of Avilez's car and searched their car. No weapons were found in their possession or in the car. An evidence technician later recovered a bullet above the rear wheel of the SUV. A forensic scientist testified that the bullet and shell casing were fired from the gun found inside the SUV.

Close to the end of the State's case, Cantoral's attorney advised the trial court that defendant's attorney had informed him that defendant intended to testify that Cantoral had the gun in the car and he told defendant to get the gun and fire it at the people in the other car. Cantoral's attorney asked for sanctions because this was different from defendant's previous assertion that he acted in self-defense. Cantoral's attorney requested that defendant be prevented from changing his defense because this new defense was antagonistic to Cantoral's defense. Defendant's attorney responded that defendant would testify that he and Cantoral were in fear for their lives and after an interaction with Cantoral, he fired the gun in self-defense. Defense counsel admitted that he had not presented these details at the hearing on his pretrial motion for severance. The State asked that defendant be estopped from testifying that he received the gun from Cantoral while Cantoral's attorney asked for a mistrial. The trial court stated that it would be taken under advisement and would rule if defendant testified.

After the State rested, both defendants moved for a directed finding, which the trial court denied for each defendant. The trial court also ruled that defendant could not testify as to any conversation between himself and Cantoral because it was hearsay.

Defendant then testified on his own behalf. He admitted that he was on parole from a 14-year sentence for residential burglary. He stated that he had known Cantoral for about 2 ½

months because defendant was dating Cantoral's sister.

On the night of July 30, 2005, Cantoral called defendant and they made plans to go to the house of one of defendant's ex-girlfriends. He planned to introduce Cantoral to his ex-girlfriend's stepmother. They went to the house, but they "weren't feeling the mood" so they left and decided to go to the House of Blues.

Defendant testified that Cantoral drove and they got off of the expressway on Ohio Street. While they were stopped at a light near the Rock-n-Roll McDonald's, defendant noticed Cantoral "exchanging words" with the other car. Defendant testified that all of the occupants of the other car were flashing Latin King signs. When defendant started to respond with Cantoral's actions, the trial court and defendant's attorney admonished him in a sidebar not to testify about anything Cantoral said to him and anything he said to Cantoral. The trial court also noted that at that point it found that "there is nothing antagonistic about the situation thus far."

Defendant resumed his testimony. After the light changed, they continued straight and the other car got out of a left-turn lane and "jumped" behind them. Defendant then saw the passenger make motions under the dashboard. Defendant thought the passenger was going to get a gun. Defendant then crawled to the back of the SUV and "grabbed the thing" from a compartment. Defendant said the weapon was wrapped in a towel. Defendant sat back into the passenger seat and tried to calm down, but he saw the car "speeding up on his side of the truck." He did not see a gun in the other car, but he moved the slide on the gun in his possession to make sure it was loaded. He "stuck [his] right hand out the back of the truck downwards and [he] fired two rounds off at the ground." Defendant said he stuck his body out of the window to fire with his right hand. His left hand had previously been damaged by a gunshot and he was unable to hold

5

things with it. After firing the gunshots, he thought the other car left and he put the gun back into the compartment. Defendant admitted that he used to be a Latin Disciple, but he was no longer a member at the time of the shooting.

Cantoral testified in his own defense. He denied having any prior or current gang affiliation. Cantoral denied having a gun in the car or on his person. He stated that he knew defendant because defendant was dating his sister. He picked up defendant around 1 a.m. on July 30, 2005. He denied stopping anywhere before going downtown. Cantoral denied seeing another car with four men in it after exiting the expressway. He also denied flashing a gang sign at the occupants of a car. He stated that while driving on Ohio Street, he heard shots. Cantoral stated that he did not see anything. He did not see defendant slide out of the passenger window, but he saw him get back into the car with a gun in his hand. Cantoral said he was shocked and asked defendant, "what the f[- - -] is going on." He said defendant went to the back of the SUV and then returned to the passenger seat. Cantoral stated that he kept driving to get out of the area until he was pulled over by the police.

After deliberations, the jury found Cantoral not guilty of aggravated discharge of a firearm and found defendant guilty of aggravated discharge of a firearm and unlawful use of a weapon by a felon. Defendant's attorney filed a motion for a new trial and noted that the denial of his pretrial motion for severance as well as the trial court's ruling that defendant could not testify about actions and statements of Cantoral prevented defendant from being able to present his defense. At the hearing on the motion, the trial court ruled that the pretrial motion for severance was properly denied and the restriction on defendant's testimony did not impair his ability to present his defense. The court also found that the defenses were not antagonistic and denied the motion

6

for a new trial. Subsequently, the trial court sentenced defendant to concurrent terms of 20 years in prison for aggravated discharge of a firearm and 12 years in prison for unlawful use of a weapon by a felon.

This appeal followed.

On appeal, defendant argues that his trial should have been severed from the trial of codefendant Cantoral because he and Cantoral presented antagonistic defenses. Defendant has framed this challenge on two grounds: (1) the trial court erred in failing to grant a severance before trial and during trial as antagonism arose and (2) his attorney was ineffective for failing to ensure that defendant and Cantoral were tried separately. Defendant admits in his opening brief that "[w]hether [his] attorney was ineffective and the trial judge erred depends on whether there were grounds for severance."

"Generally, defendants who are jointly indicted are to be jointly tried unless a separate trial is necessary to avoid prejudice to one of the defendants." People v. Mahaffey, 165 Ill. 2d 445, 469 (1995). "A joint trial promotes economy, reliability, and consistency in the judicial process. In a joint trial, the jury obtains a more complete view of all the acts underlying the charges than would be possible in separate trials. From this perspective, the jury may be able to determine more reliably the guilt or innocence of a particular defendant ***." Mahaffey, 165 Ill. 2d at 469.

"A defendant moving for severance must state how he would be prejudiced by a joint trial." People v. McCann, 348 Ill. App. 3d 328, 335 (2004). "Mere apprehension of prejudice is not enough." McCann, 348 Ill. App. 3d at 335. Prejudice requiring severance occurs when (1) codefendants' defenses are antagonistic, where the trial becomes more of a contest between codefendants than between the State and defendants or one protests his innocence while

condemning the other, or (2) statements by codefendant implicating the defendant are admitted but the defendant is unable to cross-examine the codefendant because the former does not testify. People v. Rice, 286 Ill. App. 3d 394, 403 (1996). "Allegations that a codefendant's theory of the case is inconsistent or contradictory to the defendant's is not sufficient to warrant severance." McCann, 348 Ill. App. 3d at 335.

"A motion for severance is to be filed prior to the commencement of trial and must state how the defendant will be prejudiced by a joint trial; mere apprehensions are not enough." Rice, 286 Ill. App. 3d at 402; see also 725 ILCS 5/114-8 (West 2004). "In ruling on a severance, the court is to make a prediction about the likelihood of prejudice at trial, taking into account 'the papers presented, the arguments of counsel, and any other knowledge of the case developed from the proceedings.' " Rice, 286 Ill. App. 3d at 402, quoting People v. Daugherty, 102 Ill. 2d 533, 541 (1984). The trial court's ruling on a motion for severance will not be reversed absent an abuse of discretion. McCann, 348 Ill. App. 3d at 335. In reviewing a trial court's pretrial denial of a motion for severance, we may consider only the arguments made by defendant and not the subsequent happenings at trial. Rice, 286 Ill. App. 3d at 402. However, "the trial court has a continuing duty at all stages of trial to grant a severance if prejudice appears." Rice, 286 Ill. App. 3d at 402.

Here, defendant contends that his defense was antagonistic with Cantoral's defense and warranted severance. Defendant and Cantoral were jointly indicted and charged with aggravated discharge of a firearm. Defendant was alleged to have been the individual who fired the weapon while Cantoral was charged under a theory of accountability for defendant's actions. Defendant's attorney filed a motion for severance, which stated that "defendant believes that the

1-08-0655

Affirmative Defense he is prepared to present and argue in the trial of this matter will present an apparent and real conflict with the defense and argument presented on behalf of his co-defendant and that said conflict will result in actual prejudice to this defendant." At the hearing on defendant's motion for severance, defense counsel argued that defendant's anticipated self-defense claim was antagonistic with Cantoral's anticipated reliance on reasonable doubt. However, defendant's attorney admitted that he could not "state with any great specificity what the co-defendant's defense is going to be," but he did not think it would support defendant's defense and only speculated about a scenario in which antagonism could arise. The trial court considered defendant's argument, but found that even if Cantoral testified that he did not know what was going to occur, the court could not see how that would be incriminating or antagonistic to defendant's self-defense claim. In its ruling, the trial court stated:

> "Based on the arguments that I have heard upon the speculation what co-defendant might say, it doesn't appear that a co-defendant has a [*sic*] 'eyewitness' to what occurred, would be in any different position than that of State witness or independent witness. If the assertion is, I was justifying doing what all people say I did, whether a co-defendant, eyewitness assuming that is the case I can at this point based on again sheer speculation what Mr. [Cantoral] might say, I can't see an antagonistic defense based on what's been presented at this time."

Based on the pretrial representations, we find that the trial court did not abuse its discretion in denying the motion for severance. Defendant's attorney did not offer any evidence

9

1-08-0655

from discovery to establish how Cantoral's testimony would incriminate defendant nor how a reasonable doubt defense would be antagonistic to defendant's claim of self-defense. The trial court considered the arguments and tried to envision the possible scenario that defense counsel raised before declining to find antagonism. This decision was not an abuse of discretion.

We also find defendant's reliance on the decision in People v. Murphy, 93 Ill. App. 3d 606 (1981), to be misplaced. In that case, two defendants were tried jointly and found guilty of armed robbery. One defendant testified that he spent the entire evening of the crime at home, while his codefendant testified that they both had been present at the scene of the crime. The codefendant added, however, that he was away from the victim but saw the defendant talking to her and that the defendant later gave him her car keys. Murphy, 93 Ill. App. 3d at 608. The appellate court held that the defendant's "explanation that [his codefendant's] testimony would implicate him, thereby contradicting his alibi and that the possibility of prejudice was absolute, was sufficient to show that the defenses were antagonistic." Murphy, 93 Ill. App. 3d at 612.

Defendant asserts that as in the Murphy case, Cantoral's testimony contradicted defendant's testimony and implicated him in the shooting. However, unlike in Murphy, no one is disputing that defendant was present and did, in fact, shoot the gun toward the other car. The circumstances presented in Murphy were significantly more troubling since the defendant's defense was that he was not present at the scene of the crime while his codefendant incriminated him by placing him at the scene and in conversation with the victim. Such antagonism is not present here as Cantoral's testimony did not implicate him in a shooting in which defendant had asserted his innocence.

We point out that defendant has not cited a case in which a defense of self-defense was

10

found to be antagonistic with a codefendant's reasonable doubt defense. Instead, we find that the decision in People v. Lovelady, 221 Ill. App. 3d 829 (1991), supports our conclusion that defendant's claim of self-defense is not antagonistic with his codefendant's reasonable doubt argument. In that case, the defendant and a codefendant were tried jointly for first degree murder, though the defendant was tried by a jury while the codefendant had a bench trial. Prior to trial, the defendant had filed a motion to sever, which the trial court initially granted, but later reversed. The evidence presented at trial showed that the defendant and the codefendant were driving around to the codefendant's mother's garage so the codefendant could change the oil in his car. Another friend joined them. While driving to the garage, they passed a man and a woman and the friend stated that the man was one of the people who had chased the codefendant's brother earlier that night. The codefendant pulled up to them and asked the man if he had a problem. The friend testified that the defendant passed a gun to the codefendant, who shot at the man. The codefendant testified that he saw the victim move as though he might be reaching for a gun. He took a gun from the defendant and shot to scare off the victim. He did not intend to shoot him. In contrast, the defendant testified that he gave the codefendant the gun earlier in the night because the codefendant needed it for protection. Defendant did not pay attention to what was happening in the alley and was listening to the radio. When he looked to his left, he saw the codefendant fire the gun. Lovelady, 221 Ill. App. 3d at 831-34.

On appeal, the defendant argued that the trial court erred in denying his pretrial motion for severance. The reviewing court disagreed and concluded that the record showed that prior to trial the defendant failed to produce any facts that the codefendant would accuse him of the shooting and would be antagonistic to his defense. The court noted that the codefendant

11

contended that he acted in self-defense, while the defendant denied any involvement in the shooting, that he was merely present in the car. The codefendant did not condemn the defendant as the perpetrator of the shooting. The Lovelady court found that the trial court did not abuse its discretion in denying the motion for severance and noted that the defenses were, at most, contradictory, not antagonistic. Lovelady, 221 Ill. App. 3d at 836. "The 'mere contradiction in testimony of two defendants as to what happened on the day of the crime does not render defenses sufficiently antagonistic to constitute reversible error.' " Lovelady, 221 Ill. App. 3d at 836, quoting People v. Lekas, 155 Ill. App. 3d 391, 408 (1987).

While the asserted defenses are reversed in this case—defendant raised self-defense while Cantoral denied any involvement—the reasoning remains the same. Defendant failed to offer any evidence to support his pretrial argument that the defenses were antagonistic. Defendant had admitted to firing the weapon, though it was, he contended, in self-defense. Like the defendant in Lovelady, Cantoral's defense was that he was "merely present at the scene of the crime and no more," it was exculpatory and a denial of any involvement in the shooting. Lovelady, 221 Ill. App. 3d at 836. Cantoral's denial of flashing gang signs was used to exculpate himself, not incriminate defendant.

Defendant also asserts that the trial court had a continuing duty to allow for severance and the court failed to sever defendant's trial when the antagonistic defenses arose during the trial. We point out that a different judge presided over the trial than the judge who considered defendant's pretrial motion for severance. Defendant argues that this antagonism was exacerbated at trial by Cantoral's attorney's objections to defendant's testimony, which the trial court excluded as inadmissible hearsay. Defendant asserts that he would have testified that he

12

shot in self-defense after an exchange with Cantoral in which both men believed a passenger in the other car was reaching for a gun and they feared for their lives.

However, the record shows that defendant's proposed testimony offered much more incriminating evidence against Cantoral than defendant now asserts. On the second day of trial near the end of the State's case, Cantoral's attorney raised an issue with the trial court. He asserted that defendant's attorney advised him that defendant would testify that Cantoral had the gun in the car and directed defendant to get the gun and it was at Cantoral's request that defendant fired the gun. None of this intended testimony was raised by defendant in the pretrial motion for severance. The State added that no one had asked to revisit the severance issue prior to trial and requested that defendant be prohibited from making any representations as to where he received the firearm. Cantoral's attorney asked for sanctions and a mistrial. The trial court denied the request for sanctions, but took the motion for a mistrial under advisement until defendant's testimony. Later, immediately prior to defendant's testimony, the parties revisited this issue. Defendant's attorney advised the parties that defendant intended to testify that there was discussion between himself and Cantoral, including that Cantoral told him where the gun was in the car and to get it and that the car that had been on Cantoral's side was behind them and coming up on defendant's side of the car. The trial court declined to rule on Cantoral's motion for a mistrial until the relevant time in defendant's testimony. During defendant's testimony, a sidebar was held outside the presence of the jury. The trial court advised defendant that he could not testify about what Cantoral was thinking or anything Cantoral said to defendant. At the end of the sidebar, the trial court noted that "[a]t this point in time I find that there is nothing antagonistic about the situation thus far."

Hearsay is an out-of-court statement offered to prove the truth of the mattered asserted. People v. Gonzalez, 379 Ill. App. 3d 941, 954 (2008). However, an out-of-court statement offered to show the effect on the listener's mind or why a listener acted the way he did is not hearsay and is admissible. Gonzalez, 379 Ill. App. 3d at 954. Defendant argues that his intended testimony about his interactions with Cantoral should have been admitted as showing the effect of Cantoral's statements on defendant's actions. We disagree. Defendant's attorney stated that defendant planned to state that Cantoral told him where the gun was and to retrieve it. These statements were intended to establish where defendant got the gun, *i.e.*, the truth of the matter asserted. Additionally, defendant does not argue that the proposed testimony fits within any hearsay exception nor do we find any exception to be applicable in this case. Therefore, even if severance had been granted, this testimony would not have been admissible. Accordingly, the testimony was inadmissible hearsay and properly excluded.

Further, the trial court did not abuse its discretion in failing to grant a severance during trial. The defenses presented by defendant and Cantoral were not antagonistic, but merely contradictory. Cantoral denied any involvement in the circumstances leading up to the shooting. He did not inculpate defendant while exculpating himself as defendant had already admitted to the shooting. Defendant contended at trial that he reasonably believed that he feared for his life, causing him to fire the gun in self-defense. As we previously pointed out, "[t]he 'mere contradiction in testimony of two defendants as to what happened on the day of the crime does not render defenses sufficiently antagonistic to constitute reversible error.' " Lovelady, 221 Ill. App. 3d at 836, quoting People v. Lekas, 155 Ill. App. 3d 391, 408 (1987). Here, the defendants' testimony was contradictory, not antagonistic. Accordingly, the trial court did not breach its duty

14

1-08-0655

grant a severance during trial.

Nevertheless, even if the trial court erred in failing to grant a severance, such error was harmless beyond a reasonable doubt. See People v. Nunn, 184 Ill. App. 3d 253, 267-68 (1989). Here, the evidence against defendant was overwhelming. The men in the car behind defendant all testified to varying degrees about the circumstances of the shooting, including Avilez's identification of defendant as the person who fired a gun at his car. Sergeant Bradley witnessed the shooting and saw defendant leaning out of the passenger window to fire a gun. Moreover, defendant admitted to firing the gun, but asserted a claim of self-defense. The evidence was sufficient for the jury to reject defendant's self-defense argument and a severed trial would not have affected the outcome.

Finally, defendant asserts that his attorney was ineffective for failing to ensure that his trial was severed from Cantoral's trial. Specifically, defendant contends that (1) his attorney failed to support his pretrial motion for severance with sufficient details showing antagonism; (2) his attorney failed to request a mistrial when antagonism arose at trial; and (3) his attorney "capitulated" to the trial court's ruling that defendant was prohibited from testifying about Cantoral's statements immediately before the shooting. The State maintains that defendant received proper representation at all stages of the trial.

Claims of ineffective assistance of trial counsel are resolved under the standard set forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct 2052 (1984). In Strickland, the Supreme Court delineated a two-part test to use when evaluating whether a defendant was denied the effective assistance of counsel in violation of the sixth amendment. Under Strickland, a defendant must demonstrate that counsel's performance was deficient and that such deficient

15

performance substantially prejudiced defendant. Strickland, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. To demonstrate performance deficiency, a defendant must establish that counsel's performance was below an objective standard of reasonableness. People v. Edwards, 195 Ill. 2d 142, 163 (2001). In evaluating sufficient prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. If a case may be disposed of on the ground of lack of sufficient prejudice, that course should be taken, and the court need not ever consider the quality of the attorney's performance. Strickland, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069. This determination must be made on the basis of the entire record, not isolated instances. People v. Kluppelberg, 257 Ill. App. 3d 516, 526 (1993). Effective assistance of counsel refers to competent, not perfect, representation. People v. Palmer, 162 Ill. 2d 465, 476 (1994).

In order to prove ineffective assistance of counsel, defendant must overcome the presumption that the challenged conduct might be considered sound trial strategy under the circumstances. People v. Giles, 209 Ill. App. 3d 265, 269 (1991). Neither mistakes in strategy nor the fact that another attorney with the benefit of hindsight would have handled the case differently indicates the trial lawyer was incompetent. People v. Young, 341 Ill. App. 3d 379, 383 (2003). A decision that involves a matter of trial strategy will typically not support a claim of ineffective representation. People v. Simmons, 342 Ill. App. 3d 185, 191 (2003). Defense counsel is not required to make losing motions or objections in order to provide effective legal assistance. People v. Kelley, 304 Ill. App. 3d 628, 636 (1999).

Here, we need not consider whether defense counsel's peformance was unreasonable as defendant cannot establish sufficient prejudice. As we have previously held, the defenses presented by defendant and Cantoral and defendant were not sufficiently antagonistic to warrant severance and defendant's testimony regarding Cantoral's statements was hearsay that did not fit within an exception and properly excluded. Defendant suffered no prejudice by his attorney's actions as the proposed testimony was inadmissible. Thus, any action by defendant's attorney would have been fruitless and cannot support a claim of ineffective assistance of counsel.

Further, we note that evidence presented was overwhelming. All four occupants of the car testified about the shooting. Avilez, the driver of the car, identified defendant as the person shooting. Sergeant Bradley observed the shooting from his car and also identified defendant as the shooter. He pursued the SUV and alerted other officers to the situation. Those officers curbed the vehicle. A gun was recovered from the SUV. Additionally, a subsequent search of the other car and its occupants did not find any weapons. Defendant admitted to the shooting, but testified that he feared for his life and acted in self-defense. The jury rejected this argument and found defendant guilty. Based on this evidence, defendant cannot show that the outcome of the trial would have been different if his trial was severed from Cantoral.

Based on foregoing reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

CAHILL, P.J., and J. GORDON, J., concur.