No. 3--02--0649 _________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2004

THE PEOPLE OF THE STATE         )  Appeal from the Circuit Court

OF ILLINOIS,                    )  of the 12th Judicial Circuit,

       )  Will County, Illinois,

Plaintiff-Appellee,        ) 

       )

v.                         )  No. 01--CF--1547

  ) 

TYJUAN MCCANN,       ) Honorable

                 )  Daniel Rozak,

Defendant-Appellant.       )  Judge, Presiding.

________________________________________________________________

PRESIDING JUSTICE HOLDRIDGE delivered the Opinion of the court:

________________________________________________________________

The defendant, Tyjuan McCann, was convicted of unlawful possession of cannabis with intent to deliver.  720 ILCS 550/5(g) (West 2000).  The trial court sentenced him to 25 years’ imprisonment.  Defendant appeals, contending that (1) the State failed to prove him guilty beyond a reasonable doubt; (2) the trial court erred in denying his motion to sever his trial from his codefendant's trial; (3) the court erred in admitting other crimes evidence; (4) he was denied a fair trial due to the prosecutor’s improper closing argument; and (5) his sentence is excessive and an abuse of discretion.  We affirm.

FACTS

Defendant and LaCrisha Davis were charged with possessing with the intent to deliver more than 5,000 grams of a substance containing cannabis.  Attorney Lawrence Dujsik entered an appearance on behalf of both defendant and Davis.  

Dujsik subsequently moved to sever the cases for trial.  He also filed a motion to withdraw from defendant’s case, citing a conflict of interest in representing both defendant and Davis.  The court granted Dujsik’s motion to withdraw from representing defendant, and appointed a public defender to represent him.  

Defendant's new attorney then filed a written motion to sever the cases for trial.  In the motion, defendant asserted his defense was that he did not participate in the commission of the crime.  Defendant noted that Davis had made a statement indicating that the cannabis belonged to him.  Defendant asserted that if Davis did not testify at the joint trial, he would be denied his right to cross-examine her regarding her prior statement.  Defendant sought severance of the trials, stating he believed that Davis' defense was antagonistic toward his defense.

At the hearing on the motion, the State informed the court that it would not introduce Davis' prior statement that the cannabis belonged to defendant.  The State ensured the court that the witnesses would be instructed to make no mention of the statement implicating defendant.  The court then denied defendant’s motion to sever.

The State subsequently filed a motion seeking to introduce evidence of a pending criminal matter in Cook County, Illinois.  In that case, the State alleged that defendant and Davis possessed 5,000 or more grams of cannabis with the intent to deliver.  The court granted the State’s motion, allowing introduction of the pending criminal matter.  

The next day, Dujsik, who continued to represent defendant in the Cook County matter, informed the court that he had filed a motion to suppress evidence and statements in the pending Cook County case.  In that motion, defendant claimed that the evidence was obtained in violation of his constitutional rights.  Dujsik stated that the court had not yet ruled on the motion to suppress.  The trial court reasserted its ruling allowing the State to introduce evidence with regard to the Cook County case.

At trial, Detective David Julian testified that he and other police officers went to an apartment in Steger, Illinois, to execute an arrest warrant that had been issued for defendant in a narcotics case.  Julian observed defendant leave the apartment building and followed him as he drove to a grocery store.  When Julian attempted to stop defendant, he fled on foot toward the apartment building.  Julian chased defendant, but lost sight of him as he entered the building. 

Julian proceeded to an apartment rented by Davis and knocked on the door.  Davis allowed the officers to enter the apartment to search for defendant.  When he entered the master bedroom, Julian saw two Ziploc freezer bags containing a substance that appeared to be cannabis, an electronic scale and smaller Ziploc bags located at the foot of the bed.  There was a strawberry decal on some of the packages that contained the smaller Ziploc bags. 

Julian then spoke with Davis, and she signed a written consent to search the apartment.  In the search, Julian found 71 bags of what appeared to be cannabis inside a small refrigerator located in the master bedroom closet.  He also found $600 in cash in a dresser drawer, and two envelopes that had been mailed to defendant at an address in Chicago Heights.

At some point during the search, Davis received a telephone call.  Davis informed the police officers that defendant was on the phone, and that he wanted to speak with them.  Julian testified that he overheard the conversation in which defendant stated he owned the cannabis.  Defendant also stated that he would surrender to the police.  Julian testified that he recognized defendant's voice from prior contacts. 

Julian then testified concerning the pending Cook County matter.  He stated that he and other officers executed a search warrant at defendant’s apartment in Chicago Heights.  When he entered the apartment, defendant and Davis were sleeping.  They were arrested and placed in the living room of the apartment.

Police officers found three "bricks" of what appeared to be cannabis inside the refrigerator.  They also found $84,000 in cash, a scale and Ziploc bags containing what appeared to be cannabis.  There was a red fruit decal on Ziploc bags found in one of the bedrooms.  Defendant stated that the cannabis and cash belonged to him, and that he sold marijuana as a source of income.  Davis stated defendant had been selling cannabis for years, he hid most of the money from her, and the apartment often contained cannabis packaged in bags that sold for ten dollars on the street. 

On cross-examination, Julian testified that defendant’s name was not on the lease of the apartment in Steger, but he found 50 to 60 pairs of men's pants, 50 men's shirts and several pairs of shoes in the master bedroom of the apartment.  In response to questioning by Davis' attorney, Julian testified that Davis stated the cannabis belonged to defendant.  The State objected to this testimony.

Police Officer David Basile testified that during the search of the Steger apartment he spoke with a person on the telephone who identified himself as defendant.  Defendant stated "[t]hat’s my dope.  Please don’t mess with my children."  Defendant then stated that he would turn himself in to the police.  Basile testified that Julian also listened to this telephone conversation. 

Davis testified that she had lived at the apartment in Steger with defendant and their three children.  She informed the police that the cannabis was not hers, and that any cannabis found in the apartment must have belonged to defendant.  Defendant brought the refrigerator in which the cannabis was found into the apartment the night before the search.  Davis did not know the refrigerator contained cannabis.  On cross-examination, Davis stated the lease, bills and a subscription for delivery of a newspaper to the apartment were in her name.  Defendant’s name did not appear on any of those items.      

Forensic scientist Pamela Wilson testified that she tested the substance found in the apartment in Steger.  One of the packages weighed 862.5 grams and another one weighed 4,717.1 grams.  Wilson testified that she first analyzed the substance by looking at it with a microscope.  She stated that cannabis can be identified by the presence of "cover hair" and "little white claw-like hairs" called cystolytes on the leaf.  Additionally, she conducted a Duquenois Levine test on the substance.  Wilson testified that a substance tests positive for cannabis when two purple layers of liquid are produced in the Duquenois Levine test, and the two separate types of hairs are found on the leaf of the substance.  Based on these two tests, Wilson testified that the substance contained cannabis. 

Forensic scientist Alan Greep testified that he analyzed the substance recovered in the apartment in Chicago Heights.  In analyzing the substance, Greep performed the microscopic test in which he looked for cystolic hairs and cover hairs on the plant material.  Greep then performed the Duquenois Levine test.  He testified that cannabis produces a purple layer of liquid over a pink layer.  Based on these two tests, Greep testified the substance he analyzed tested positive for cannabis. 

In his closing argument, the prosecutor compared defendant’s defense to that of an octopus, stating:

"when the octopus is challenged or frightened or threatened it pulls back and releases an inky fluid in the water to cloud its predator and slips away.  There was plenty of inky fluid spilled across this courtroom during the cross-examination and during a point attempted to be made by the defendant."

The prosecutor later argued that "[j]ust as the octopus has no real defense against its predators and has to release the inky fluid, they don’t have a defense against this case either."

In rebuttal, another prosecutor stated a trial was like a highway to a destination which is a guilty or not guilty verdict.  The prosecutor went on to state:

"that road is a very bumpy road.  And there is a lot of dust being thrown up on that road.  And all that dust, you know, their hopeless helpless efforts to try to punch holes into the State’s case." 

The jury found defendant guilty of unlawful possession of cannabis with intent to deliver.  At sentencing, the trial court noted that defendant had a lengthy criminal record and had received probation on several prior occasions.  The court also found defendant was more culpable than Davis in this offense.  Based on these circumstances, the trial court sentenced defendant to 25 years’ imprisonment.

DISCUSSION

I. Reasonable Doubt

On appeal, defendant first contends that the State failed to prove him guilty beyond a reasonable doubt because the evidence was not sufficient to show that the substance seized from the apartment was cannabis.  In support of this argument, defendant claims that the Duquenois Levine test is not sufficiently reliable to prove the substance was cannabis.  He also asserts that the expert witnesses could not agree on the correct colors to look for in determining whether the substance was cannabis when performing that test.

When assessing reasonable doubt, we view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 478 N.E.2d 267 (1985). 
 W
e do not reassess the witnesses’ credibility or reweigh their testimony, since these functions belong to the trier of fact.  
People v. Jimerson
, 127 Ill. 2d 12, 535 N.E.2d 889 (1989).  
A reversal is warranted only if the evidence is so improbable or unsatisfactory that it leaves a reasonable doubt regarding the defendant’s guilt.  
People v. Flowers
, 306 Ill. App. 3d 259, 714 N.E.2d 577 (1999).

In a controlled substance case, the State is required to present sufficient evidence to show that the substance is in fact a controlled substance.  
People v. Hagberg
, 192 Ill. 2d 29, 733 N.E.2d 1271 (2000) (citing 
People v. Park
, 72 Ill. 2d 203, 380 N.E.2d 795 (1978)).  
Our supreme court has noted that microscopic examination combined with the Duquenois Levine test is highly reliable, and sufficient to accurately determine whether a particular substance contains cannabis.  
Park
, 72 Ill. 2d 203, 380 N.E.2d 795.       

Forensic scientist Pamela Wilson tested the substance found in the apartment in Steger using microscopic examination and the Duquenois Levine test.  Based on these tests, Wilson found that the substance contained cannabis.  Under 
Park
, this evidence is sufficient to prove that the substance seized in this case contained cannabis.    

The fact that the experts offered slightly differing testimony as to the colors of liquid that are present when testing for cannabis 
simply goes to the credibility of their opinions that the substance contained cannabis.  As noted, we will not reassess the credibility of witnesses on review because that is the function of the jury.  Viewed in the light most favorable to the prosecution, the evidence was sufficient for a rational jury to conclude that the substance contained cannabis.  Accordingly, defendant's claim in this regard must fail.

II. Motion to Sever 

Defendant also contends that the trial court erred in denying his motion to sever his trial from Davis' trial.

Generally, defendants jointly indicted may be tried together unless fairness to one of the defendants requires a separate trial.  
People v. Lee
, 87 Ill. 2d 182, 429 N.E.2d 461 (1981).  A defendant moving for severance must state how he would be prejudiced by a joint trial.  
People v. Harris
, 123 Ill. 2d 113, 526 N.E.2d 335 (1988).  Mere apprehension of prejudice is not enough.  
Harris
, 123 Ill. 2d 113, 526 N.E.2d 335 (1988).  The trial court's decision to deny a motion to sever will not be reversed absent an abuse of discretion.  
People v. Daugherty
, 102 Ill. 2d 533, 468 N.E.2d 969 (1984). 

Courts have recognized two independent sources of potential prejudice that are each likely to require separate trials for jointly indicted defendants.  
People v. Bean
, 109 Ill. 2d 80, 485 N.E.2d 349 (1985).  The first is interference with the constitutionally protected right to confront witnesses.  
Bean
, 109 Ill. 2d 80, 485 N.E.2d 349 (1985).  This occurs when a codefendant’s out-of-court statements that implicate the defendant are admitted at trial.  
Bean
, 109 Ill. 2d 80, 485 N.E.2d 349; 
People v. Clark
, 17 Ill. 2d 486, 162 N.E.2d 413 (1959).  A severance should be granted in these circumstances unless the prosecution declares that the codefendant’s admissions or confessions will not be offered at trial, or if offered, that all reference to the moving defendant will be eliminated from the statements.  
Clark
, 17 Ill. 2d 486, 162 N.E.2d 413; 
People v. McVay
, 98 Ill. App. 3d 708, 424 N.E.2d 922 (1981).

The second source of potential prejudice occurs when the codefendants’ defenses are so antagonistic that one of them cannot receive a fair trial jointly with the others.  
Bean
, 109 Ill. 2d 80, 485 N.E.2d 349; 
Daugherty
, 102 Ill. 2d 533, 468 N.E.2d 969.  Allegations that a 
codefendant’s theory of the case is inconsistent or contradictory to the defendant’s is not sufficient to warrant severance.  
People v. Rodriguez
, 289 Ill. App. 3d 223, 680 N.E.2d 757 (1997).  Defenses are antagonistic when each codefendant implicates the other in the offense, and professes his own innocence.  
People v. Adams
, 176 Ill. App. 3d 197, 530 N.E.2d 1155 (1988). 

In this case, the State declared at the hearing on the motion to sever that it would not use any part of Davis’ prior statement that implicated defendant.  The State assured the court that the witnesses would be instructed to avoid mentioning this statement.  This was sufficient to resolve the concern regarding defendant's right to confront witnesses.   

During the trial, Davis’ statement implicating defendant was mentioned by Detective Julian in response to cross-examination by Davis' attorney.  However, a reviewing court cannot decide the merits of a motion for severance based on subsequent events that occurred during the trial.  
Bean
, 109 Ill. 2d 80, 485 N.E.2d 349; 
Daugherty
, 102 Ill. 2d 533, 468 N.E.2d 969.  Here, the State assured the trial court that the statement implicating defendant would not be used at trial.  We also note that the State objected to the testimony offered by Julian on cross-examination.  Given the facts that existed at the time of the hearing, 
we conclude that the trial court did not abuse its discretion in denying defendant’s motion to sever.

Defendant also contends that his defense was antagonistic to Davis’ defense.  According to his motion to sever, defendant's defense was that he did not participate in the commission of the crime.  Davis' defense was that she did not possess the cannabis or know it was present.  These defenses were not directly antagonistic as the codefendants were not implicating each other.  Instead, both defendant and Davis claimed that they did not possess the cannabis.  This was not a situation where each codefendant implicated the other in the offense while professing their own innocence.  See 
Adams
, 176 Ill. App. 3d 197, 530 N.E.2d 1155.  Accordingly, the defenses were not so antagonistic that one of the codefendants could not receive a fair trial. 

Finally, defendant contends that his trial should have been severed from Davis’ because Dujsik continued to represent him in the Cook County case while accusing him of being guilty of the offense in this case.  There was no showing that defendant was prejudiced by Dujsik's representation of Davis in this case.  Therefore, we conclude that the trial court was not required to grant severance on this ground.  In sum, we conclude that the trial court did not abuse its discretion in denying defendant’s motion to sever.

III. Admissibility of Other Crimes Evidence

Next, defendant argues that the trial court erred in admitting evidence with regard to the Chicago Heights arrest and charges.  Defendant contends that this evidence was not admissible as evidence of other crimes.  Defendant also asserts that the trial court erred in allowing admission of the evidence while a motion to suppress was pending in the Cook County case. 

Generally, evidence is not admissible in a criminal prosecution against an accused if it is seized in violation of his fourth amendment rights.  
United States v. Calandra
, 414 U.S. 338, 38 L. Ed. 2d 561, 94 S. Ct. 613 (1974); 
People v. Dowery
, 62 Ill. 2d 200, 340 N.E.2d 529 (1975).  One of the purposes of the exclusionary rule is the protection of a defendant's fourth amendment rights against unreasonable searches and seizures.  
Brown v. Illinois
, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254 (1975).  The rule is intended to deter unlawful conduct by police officers, and prohibits the use at trial of evidence obtained in violation of a defendant's constitutional rights.  
Brown
, 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; 
People v. Villagomez
, 313 Ill. App. 3d 799, 730 N.E.2d 1173 (2000).  

In determining whether the exclusionary rule should be extended to certain proceedings, courts employ a balancing test to limit application of the rule to areas where its remedial purposes are most effectively served.  
Calandra
, 414 U.S. 338, 38 L. Ed. 2d 561, 94 S. Ct. 613.  Specifically, courts must balance the benefits of applying the exclusionary rule against the costs to "the societal interest of law enforcement."  
United States v. Janis
, 428 U.S. 433, 448, 49 L. Ed. 2d 1046, 1058, 96 S. Ct. 3021, 3029 (1976); 
McCullough v. Knight
, 293 Ill. App. 3d 591, 688 N.E.2d 1186 (1997).

Here, the same police officers were investigating controlled substance cases against defendant in both Will and Cook Counties.  If the exclusionary rule were limited to only the case in which the contested evidence was seized, that evidence would be admissible in other prosecutions despite any constitutional violation in obtaining the evidence.  Therefore, the deterrent effect of the exclusionary rule would be reduced in these circumstances.  In fact, the State would receive a benefit from the constitutional violation because it could bolster the other cases against the defendant by admission of the other crimes evidence. 

We note that, in a factually similar case, a federal district court allowed a prior State charge to be admitted against a defendant in a federal prosecution despite questions as to the constitutionality of the seizure of the evidence.  
People v. Hill
, 898 F.2d 72 (7th Cir. 1990).  The Seventh Circuit Court of Appeals held that, with regard to evidence of other crimes seized by state officers, federal district courts must make an independent inquiry concerning the constitutionality of the seizure before admitting the evidence.  
Hill
, 898 F.2d 72 (citing 
Elkins v. United States
, 364 U.S. 206, 4 L. Ed. 2d 1669, 80 S. Ct. 1437 (1960))
.  The court did not address the issue of whether the other crimes evidence would necessarily be excluded if it was seized in an unconstitutional search.  However, the necessity of conducting an inquiry into the constitutionality of the seizure indicates that there would be some consequence for a constitutional violation.  Accordingly, 
Hill
 provides additional support for our finding that the exclusionary rule should apply in these circumstances.  But see 
United States v. Knight
, 185 F. Supp. 65 (D.C. 2002) (and cases cited therein) (exclusionary rule does not necessarily apply in these circumstances).

In sum, we conclude that the deterrent effect of the exclusionary rule would be greatly diminished if police officers were allowed to obtain evidence in violation of defendant's constitutional rights in the Cook County case, and then introduce the evidence in the related Will County case as prior criminal conduct.  The Will County circuit court was required to either make an independent determination of the admissibility of this evidence, or continue the matter pending a resolution of this issue by the Cook County circuit court.  We conclude that the trial court erred in admitting this evidence without a determination as to the constitutionality of the seizure. 

IV. Harmless Error

The State asserts that admission of the evidence seized in the Cook County case was harmless error.  

As a general proposition, an error in the admission of evidence does not automatically lead to the reversal of a conviction and may be analyzed using the harmless error rule.  
People v. Hobson
, 169 Ill. App. 3d 485, 525 N.E.2d 895 (1988).  The test for harmless constitutional error is whether the error was harmless beyond a reasonable doubt.  
People v. Wallace
, 331 Ill. App. 3d 822, 772 N.E.2d 785 (2002).  An error may be deemed harmless beyond a reasonable doubt if there is overwhelming evidence to support the conviction.  
Wallace
, 331 Ill. App. 3d 822, 772 N.E.2d 785.

In this case, the evidence of defendant’s guilt was overwhelming.  Defendant fled when police officers attempted to stop him.  See 
People v. Ransom
, 319 Ill. App. 3d 915, 746 N.E.2d 1262 (2001) (flight may be considered by a jury as evidence of guilt).  In a search of the apartment, police officers found a large amount of cannabis, an electronic scale and small Ziploc bags.  Additionally, the officers found evidence that defendant had been living in the apartment.  Most importantly, defendant called Davis while the officers were still present at the apartment.  Defendant informed the officers that the cannabis belonged to him, and stated he would surrender to the police.  Julian recognized defendant’s voice from prior contacts.  Based on these facts, we find that the evidence supporting the conviction was overwhelming.  Therefore, any error in admitting the other crimes evidence was harmless. 

V. Prosecutorial Misconduct

Defendant also contends that he was deprived of a fair trial because the prosecutors disparaged his attorney by comparing him to an octopus releasing an inky fluid, and by accusing him of throwing dust on the road to justice.  Defendant concedes that he did not properly preserve these claims for review, but states that they should be reviewed as plain error.  

Generally, a claim is waived on appeal if it was not raised in the trial court through both a contemporaneous objection and a written posttrial motion.  
People v. Enoch
, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988).  
Plain error affecting a substantial right is an exception to the waiver rule.  134 Ill. 2d R. 615(a).  Application of the plain error doctrine is limited to circumstances where the evidence is closely balanced, or the error is of such magnitude that the defendant was denied a fair trial.  
People v. Nieves
, 192 Ill. 2d 487, 737 N.E.2d 150 (2000).

As previously discussed, the evidence in this case was not closely balanced.  Moreover, the complained-of comments, when viewed in the context and totality of the closing arguments, were brief and isolated.  See 
People v. Terrell
, 185 Ill. 2d 467, 708 N.E.2d 309 (1998) (brief and isolated comments were not so inflammatory as to constitute reversible error); 
People v. Cloutier
, 178 Ill. 2d 141, 687 N.E.2d 930 (1997).  We find that the comments in this case were not so prejudicial as to deny defendant a fair trial.  Therefore, 
any improper comments were not plain error.   
 

VI. Excessive Sentence

Finally, defendant contends that 
his sentence is excessive when 
compared to the six-year sentence imposed on Davis.

Fundamental fairness is not violated simply because one defendant is sentenced to a greater term than another.  
People v. Grisset
, 288 Ill. App. 3d 620, 681 N.E.2d 1010 (1997).  A disparity in sentencing may be justified by differences in the relative degree of involvement by the codefendants in the offense, or any differences in their criminal histories, character or potential for rehabilitation.  
Grisset
, 288 Ill. App. 3d 620, 681 N.E.2d 1010 (1997).  
A trial court's sentence will not be reversed absent an abuse of discretion.  
People v. Streit
, 142 Ill. 2d 13, 566 N.E.2d 1351 (1991). 

At the sentencing hearing, the trial court noted that defendant had a lengthy drug-related criminal record while Davis did not have any prior criminal history.  Defendant had received probation on his prior drug offenses.  The court also noted that Davis had received very good grades in both high school and college, indicating a potential for rehabilitation.  Finally, the court found that defendant was much more culpable than Davis in this offense.  Based on these considerations, we find that the disparity in the sentences was justified.  The trial court did not abuse its discretion in sentencing defendant.        

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed. 

MCDADE and SLATER, JJ., concur.