NO. 4-07-0688          Filed 10/22/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| DAT TAN NGO, | ) | No. 06CF189 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Harold J. Frobish, |
| | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the opinion of the court:

In June 2007, a jury found defendant, Dat Tan Ngo, guilty of two counts of controlled substance trafficking. In July 2007, the trial court sentenced him to 40 years in prison.

On appeal, defendant argues (1) the State failed to prove him guilty beyond a reasonable doubt, (2) the prosecutor's closing argument was improper, and (3) he was deprived of a fair trial based on his codefendant's statements and defense strategy. We affirm.

I. BACKGROUND

In October 2006, the State charged defendant with two counts of controlled substance trafficking (720 ILCS 570/401.1(a) (West 2006)). In count I, the State alleged defendant knowingly brought into the State of Illinois with the intent to deliver 900 grams or more of a substance containing methylenedioxymethamphetamine (MDMA), also known as ecstasy, a controlled substance.

Count II alleged he knowingly brought into the state 1,500 or more tablets of a substance containing MDMA with the intent to deliver. The State also charged codefendant, Loan Bui, with the same offenses in case No. 06-CF-190.

In May 2007, the State moved to consolidate the trials of the two defendants, which the trial court granted over defendant's objection. In June 2007, the consolidated jury trials commenced. Illinois State Police trooper Jeffery Enderli testified he used a laser device to observe a white vehicle traveling 74 miles per hour on Interstate 55 on October 21, 2006. He executed a traffic stop and found defendant in the driver's seat and codefendant in the passenger seat. Enderli asked defendant for his driver's license, but defendant stated he did not have it as he had lost his wallet. Enderli stated defendant was acting "very nervous" and eventually wrote out his name and address. Enderli discovered the information provided by defendant was incorrect and asked him to come back to the squad car. Defendant then told Enderli the vehicle belonged to Bui, his sister. Enderli exited his squad car and asked Bui for consent to search the vehicle, and she consented.

While conducting a search of the vehicle, Enderli noticed a car seat in the rear passenger area. As he lifted it up, he discovered a towel "wedged up" in the bottom. He found a rectangular box designed for storing a power tool wrapped in the

towel.  Inside the tool box, Enderli found four plastic Zip-loc bags.  Three of the bags contained a "large quantity of a green round-shaped pills [sic] with a Superman logo stamped" on the pills.  The fourth bag contained light-pink round-shaped pills with a pear shape on them.  Enderli suspected the pills were ecstasy.

After the discovery of the suspected ecstasy, Enderli secured defendant in handcuffs, placed him in the squad car, and read him his rights.  Upon questioning, defendant told Enderli the pills were ecstasy.  Illinois State Police sergeant Vidal Panizo testified defendant stated he was transporting these pills from Michigan to St. Louis for a friend for $5,000.  Defendant told him he received the pills, repackaged them in four Zip-loc bags, put them in a box and wrapped a towel around it, then placed the box under the car seat.  The parties stipulated exhibit No. 1 contained 1,106 pills, exhibit No. 2 contained 1,017 pills, exhibit No. 3 contained 1,022 pills, and exhibit No. 4 contained 661 pills.

Kerry Nielsen, a forensic scientist with the Illinois State Police, testified he randomly selected 10 tablets from each of the four bags.  He stated the pills were similar and consistent in appearance.  The results of testing the 40 tablets revealed the presence of MDMA.  In exhibit No. 1, Nielsen found the 10 tablets tested weighed 3.0 grams and the remaining tablets

weighed 309.8 grams.  In exhibit No. 2, the 10 tablets tested weighed 3.3 grams and the remaining tablets weighed 337.3 grams. In exhibit No. 3, the 10 tablets tested weighed 3.3 grams and the remaining untested tablets weighed 339.2 grams.  In exhibit No. 4, the 10 tablets tested weighed 3.3 grams and the remaining tablets weighed 217.6 grams.

On cross-examination, Nielsen testified he did not test all of the tablets because the prosecutor suggested 10 out of each bag "would be a good sample."  He stated "it would not be feasible to test every tablet" as it would be "very time consuming."  Nielsen had no opinion on the tablets he did not test. The 40 pills he tested weighed 12.9 grams.

Defendant and codefendant exercised their constitutional right not to testify.  See U.S. Const., amend. V.  Following closing arguments, the jury found defendant guilty on both counts.  The jury also found codefendant guilty on both counts. Defendant filed a posttrial motion, which the trial court denied. In July 2007, the court entered a conviction on count II and sentenced defendant to 40 years in prison.  In August 2007, defendant filed a motion to reconsider sentence, which the court denied.  This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

Defendant argues the State failed to prove him guilty

beyond a reasonable doubt that he trafficked in 900 grams or more or 1,500 tablets or more of a controlled substance where the State's expert failed to conclude either the total tablets seized from the four separate bags were sufficiently homogeneous or that the untested tablets contained a controlled substance. We disagree.

"When reviewing a challenge to the sufficiency of the evidence in a criminal case, the relevant inquiry is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." People v. Singleton, 367 Ill. App. 3d 182, 187, 854 N.E.2d 326, 331 (2006). The trier of fact has the responsibility to determine the credibility of witnesses and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from that evidence. People v. Lee, 213 Ill. 2d 218, 225, 821 N.E.2d 307, 311 (2004). A court of review will not overturn the verdict of the fact finder "unless the evidence is so unreasonable, improbable[,] or unsatisfactory that it raises a reasonable doubt of defendant's guilt." People v. Jones, 219 Ill. 2d 1, 33, 845 N.E.2d 598, 616 (2006).

> "When a defendant is charged with pos-
> session of a specific amount of an illegal
> drug with intent to deliver and there is a

- 5 -

lesser included offense of possession of a smaller amount, then the weight of the seized drug is an essential element of the crime and must be proved beyond a reasonable doubt. [Citation.] A chemist, however, generally need not test every sample seized in order to render an opinion as to the makeup of the substance of the whole. [Citation.] Rather, random testing is permissible when the seized samples are sufficiently homogenous so that one may infer beyond a reasonable doubt that the untested samples contain the same substance as those that are conclusively tested. [Citation.] This rule is based in reason and practicality." People v. Jones, 174 Ill. 2d 427, 428-29, 675 N.E.2d 99, 100 (1996).

In this case, the State charged defendant with trafficking 900 grams or more of MDMA or, alternatively, 1,500 or more tablets of MDMA. The charges conformed to the enhanced Class X felony penalties of 15 to 60 years in prison (720 ILCS 570/401(a)(7.5)(D) (West 2006)) and doubled to 30 to 120 years in prison for controlled substance trafficking (720 ILCS 570/401.1(b) (West 2006)). However, the Criminal Code of 1961 provides for lesser penalties for smaller amounts of controlled

substances.  See 720 ILCS 570/401(c)(7.5) (West 2006) (a conviction between 5 and 15 grams or 10 to 15 tablets results in a sentence applicable to a Class 1 felony).  Here, the trial court entered a conviction on count II, which alleged defendant brought 1,500 or more tablets of MDMA into the state.  Accordingly, the amount of the seized contraband was an essential element of the offense that must be proved beyond a reasonable doubt.  Jones, 174 Ill. 2d at 428-29, 675 N.E.2d at 100.

Trooper Enderli testified three Zip-loc bags contained a large quantity of green round-shaped pills stamped with a Superman logo.  Another Zip-loc bag contained light-pink round-shaped pills stamped with a pear design.  Exhibit No. 1 contained 1,106 pills.  Nielsen stated the pills "all appeared similar in appearance."  He randomly selected 10 pills, a "good sample," and his test revealed the presence of MDMA.  Exhibit No. 2 contained 1,017 pills.  Nielsen examined all the pills, found they were "all consistent in appearance," and the test revealed MDMA.  Exhibit No. 3 contained 1,022 pills.  Nielsen examined all the tablets, tested 10, and the test revealed MDMA.  Exhibit No. 4 contained 661 pills.  Nielsen conducted the same test on 10 pills, which revealed MDMA.  Thus, each of the 10 pills randomly selected from each of the four bags contained MDMA.

Defendant argues Nielsen's opinion fell short of establishing the tablets in all four bags were homogenous or the

- 7 -

untested tablets were controlled substances. Defendant points out Nielsen had no opinion on the tablets he did not test. Whether the tablets at issue contained a controlled substance was a question for the trier of fact, here the jury. See People v. Coleman, 301 Ill. App. 3d 37, 44, 704 N.E.2d 690, 696 (1998). We find the jury had sufficient evidence to conclude beyond a reasonable doubt that over 1,500 of the seized tablets were MDMA.

Trooper Enderli testified the three larger bags contained green round-shaped pills with a Superman logo on them. Nielsen opined the pills in exhibit Nos. 1 and 2, over 2,000 pills, were all similar in appearance. His random sample of 10 pills from each bag conclusively showed the presence of MDMA. Moreover, defendant admitted to Panizo he was transporting ecstasy to St. Louis. Further, he told Panizo he repackaged the pills in four Zip-loc bags, put them in a box, wrapped a green towel around it, and placed it under the child booster seat.

This was not a case where testing was done on the contents of some bags, but not others, with an expert rendering an opinion on all of the bags. Whether a bag contained MDMA was not subject to speculation or conjecture in this case. All four bags contained MDMA. The jury could examine exhibit Nos. 1 and 2, see over 2,000 pills that Nielsen found were similar in appearance, and conclude the pills were all the same. Then, the jury could reasonably infer the remaining untested pills in the

four bags were MDMA and thus conclude defendant was in possession of 1,500 tablets of MDMA as charged by the State. That Nielsen had no opinion on the untested pills is of no consequence. The jury had sufficient evidence to infer beyond a reasonable doubt that the untested samples contained the same substance as those that were conclusively tested.

## B. Closing Arguments

Defendant argues he is entitled to a new trial because the prosecutor's closing argument repeatedly emphasized all the tablets were identical and, to a mathematical certainty, contained ecstasy without sufficient evidence allowing for such argument. We disagree.

Initially, we note defense counsel did not object to the complained-of statements in the State's closing argument and did not raise them in a posttrial motion. Thus, we find this issue forfeited. See People v. Hestand, 362 Ill. App. 3d 272, 279, 838 N.E.2d 318, 324 (2005) (a defendant must object at trial and raise the issue in a posttrial motion to preserve the issue for review on appeal). Defendant, however, argues the alleged error amounted to plain error and asks us to review his claim under the plain-error doctrine.

In People v. Herron, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467, 479-80 (2005), our supreme court discussed the plain-error doctrine, in part, as follows:

"[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. In the first instance, the defendant must prove 'prejudicial error.' That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. The State, of course, can respond by arguing that the evidence was not closely balanced, but rather strongly weighted against the defendant. In the second instance, the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process."

A prosecutor is afforded wide latitude in making his closing argument and may comment on the evidence as well as argue reasonable inferences from the facts. <u>People v. Simms</u>, 192 Ill.

2d 348, 396, 736 N.E.2d 1092, 1124 (2000). "[C]losing arguments must be viewed in their entirety, and the challenged remarks must be viewed in context." People v. Wheeler, 226 Ill. 2d 92, 122, 871 N.E.2d 728, 745 (2007). Further:

> "Even if prosecutorial comment exceeds the
> bounds of proper argument, the verdict must
> not be disturbed unless it can be said that
> the remark caused substantial prejudice to
> the defendant [citation], taking into account
> 'the content and context of the language, its
> relationship to the evidence, and its effect
> on the defendant's right to a fair and impar-
> tial trial.'" People v. Williams, 192 Ill.
> 2d 548, 573, 736 N.E.2d 1001, 1015 (2000),
> quoting People v. Kliner, 185 Ill. 2d 81,
> 152, 705 N.E.2d 850, 886 (1998).

Even prejudicial statements by the prosecutor may be cured by the trial court's proper instructions of law. Simms, 192 Ill. 2d at 396, 736 N.E.2d at 1124-25. "The accused is denied a fair and impartial trial where the prejudice reveals a total breakdown in the integrity of the judicial process." People v. Evans, 209 Ill. 2d 194, 224, 808 N.E.2d 939, 956 (2004).

In the case sub judice, defendant sets forth two allegations of error in the State's closing arguments. First, he

- 11 -

contends the prosecutor repeatedly argued the tablets were identical without evidence to support those statements.  The prosecutor offered, in part, the following:

> "It will be rather obvious to you that every tablet is identical.

> * * *

> ***In each instance, ten drawn.  And here is the important thing--at random--from among these, and you can eyeball them.  You can't miss it.  Every one is identical in each bag.

> * * *

> ***So let's just take them bag by bag where you know they are absolutely identical.  And please look at them.  You will see that.  You will see how identical they are."

At trial, Nielsen testified about the large number of tablets found in the four plastic bags.  He stated he randomly selected 10 tablets out of each bag.  He noted they all appeared similar and consistent in appearance.  The prosecutor's comments cannot be seen to have denied defendant a fair and impartial trial.  The prosecutor was commenting on the expert's testimony and the evidence before the jury, which included thousands of similar looking tablets.  "[A] prosecutor is permitted to discuss

subjects of general knowledge, common experience, or common sense in closing argument."  People v. Beard, 356 Ill. App. 3d 236, 242, 825 N.E.2d 353, 359 (2005).  Here, the prosecutor could reasonably comment on the evidence and ask the jury to use its common sense in looking at that evidence.

Second, defendant argues the prosecutor erroneously claimed the State proved all the tablets contained ecstasy to a mathematical certainty.  The prosecutor stated, in part, as follows:

"Now, let's talk a little more, since I am in that math topic, I am going to hit you with a little of that junior high math.  Do you remember that formula for figuring out the odds of something?  If you want to figure out what the odds of something are, it is that number to the N minus one power.  All right. What does that mean?  Well, if I think that something is 2 to 1, okay?  And I do it one time, then my odds are 2 to 1.  If I do it twice, it is two times two, so I got four of them.  If I do it three times, two times two times two, it is eight.  Now, what is inter-esting is after you get through those first few numbers, it starts going up pretty fast.

- 13 -

When you do that math, if you, again, remember your junior high math, when you start doing that with numbers like ten at random from the sample, two to the nine is 1,024. That is one of those computer numbers you run into, that 256, 512, 1,024, those things. That is what the kilobyte thing goes, I guess the 1,024, those of you that are familiar with computers because it is all on that multiples of two. If you take it in--and I am starting at if you operate on the assumption that only half of them are just like the ten, the odds of only half of them being just like the ten sample, in other words, MDMA, these identical pills, the odds of that not being--of even that being the case, that only half of those pills, 500 of them, are MDMA, based on that random sampling is 1,024 to 1. You go out to say oh, well, only a third of them are MDMA. We don't know what third, only a third of them. When you do that with the number three, that ten random pull, it really gets weirder. You are at one in 59,0-00 chances that they are 1 in 3. When you

- 14 -

get out to 1 in 4, you are going to want this one. Do the math, please. Multiply it out. Yes, it is easier with a calculator, but with a pen and paper you can do it. It is one million forty-eight thousand and change. That is the odds of that not--of that coming out. So even at one of every two pills based on that ten pill random sampling being MDMA, only half the odds of it being that small a percentage, 50 percent, is 10,000--is a thousand plus to one. That is all MDMA."

In rebuttal, the prosecutor stated, in part, as follows:

"Remember something else, too. You know, you can do the number thing. While I have been listening to counsel, I wrote it out. I didn't cheat with the calculator. You do the two things. That is if only half of that stuff, and this is the way to come up with the lowest, if you will, end probability. If only half of that have stuff isn't what Nielsen found in the ten in the random sample, these two and your 210 that is that 1,024, that is 1,024 to 1. Again, if I can do it, junior high math. If you go to 3, only a

- 15 -

third of it now. Okay. Only a third of the, well, what was the total? What was our total of the pills? Let's see, 661, and these are each a little over a thousand. Only a third of 3,600. Okay. Which would get you below 1,500, by the way. But remember what the odds come out to. Do the math, folks. If I can do it sitting there at a table, somebody there can do it. One third, use the number three, that 10, ten random tries. And every one of them. This is the miracle 40. 40 times. 40 hits. Boy, wouldn't you love to do that with the lottery. You could pick them out. 40 random numbers and every one a winner. An absolute winner. I mean, it gets to the point of absurdity when you do it one in three the odds are 58,000 and change to 1 of only a third of those being MDMA."

Here, Nielsen testified he picked 10 tablets at random from each bag. In his closing argument, the prosecutor's attempted calculations sought only to demonstrate the long odds that the remaining tablets, which were similar in appearance, did not contain ecstasy. The prosecutor told the jurors to "do the math" themselves, indicating he was not presenting his calculations as

evidence of mathematical certainty but as a commonsense argument that it was unlikely the remaining tablets did not contain ecstasy. Although it would be best for a prosecutor "to avoid any reference to statistics not in the record" (People v. Prewitt, 160 Ill. App. 3d 942, 948, 513 N.E.2d 977, 981-82 (1987)), we find no prejudice.

Considering the nature of the evidence against defendant and the entire context of the prosecutor's closing arguments, we find defendant was not denied his right to a fair trial. Moreover, the trial court instructed the jury that closing arguments were not evidence and arguments not based on the evidence were to be disregarded. Thus, we find no plain error.

### C. Joint Trial

Defendant argues codefendant's statements and antagonistic defense deprived him of a fair trial. In the alternative, defendant argues he received ineffective assistance of counsel when counsel failed to request a severance or preserve the issue for review.

In this case, the trial court granted the State's motion to consolidate the cases over defense counsel's objection. The court noted it would revisit the issue if counsel desired. Defense counsel did not move to sever before trial. Further, counsel did not raise this issue in a posttrial motion. Thus,

defendant has forfeited the argument on appeal.

Defendant, however, asks this court to review the issue as a matter of plain error. He does not argue the evidence was closely balanced. Instead, he argues the trial court's violation of his right to severance implicated his constitutional rights to due process, confrontation of witnesses, and the privilege against self-incrimination.

"It is well established in Illinois that defendants jointly indicted are to be jointly tried unless fairness to one of the defendants requires a separate trial to avoid prejudice." People v. Harris, 123 Ill. 2d 113, 158, 526 N.E.2d 335, 355 (1988). "Mere apprehensions of prejudice are not enough." People v. Bean, 109 Ill. 2d 80, 92, 485 N.E.2d 349, 355 (1985). A trial court has the discretion whether to grant or deny a motion to sever and that decision will not be reversed on appeal absent an abuse of that discretion. Harris, 123 Ill. 2d at 159, 526 N.E.2d at 355. On appeal, the reviewing court is not to decide whether the cases should have been severed "based on [the] subsequent events during the trial." Bean, 109 Ill. 2d at 100, 485 N.E.2d at 358; accord People v. Daugherty, 102 Ill. 2d 533, 545, 468 N.E.2d 969, 974 (1984); People v. McCann, 348 Ill. App. 3d 328, 336, 809 N.E.2d 211, 218 (2004).

Two forms of potential prejudice have been identified by the courts. "The first type occurs when a codefendant has

made hearsay admissions that implicate the defendant. The defendant may be denied his constitutional right of confrontation if the codefendant's hearsay admission is admitted against him and the defendant is unable to cross-examine the codefendant because the latter does not testify." Daugherty, 102 Ill. 2d at 541, 468 N.E.2d at 973.

Here, the first form of prejudice does not apply. The State did not indicate prior to trial that out-of-court statements made by codefendant would be used to implicate defendant. Moreover, even if subsequent events at trial are considered (see Daugherty, 102 Ill. 2d at 545, 468 N.E.2d at 974), no prejudice was shown. Codefendant did not testify. Further, Trooper Enderli's testimony concerning his conversation with Bui at the traffic stop did not include accusations or implications of defendant's involvement in the trafficking of controlled substances. Instead, Bui greeted the trooper, asked why the occupants were stopped, told the trooper nothing illegal was in the vehicle, and consented to a search.

The second form of prejudice occurs "when the codefendants' defenses are so antagonistic to each other that one of the codefendants cannot receive a fair trial jointly with the others." People v. Bramlett, 211 Ill. App. 3d 172, 178, 569 N.E.2d 1139, 1144 (1991). "Actual hostility between the two defenses is required [citations]." Bean, 109 Ill. 2d at 93, 485 N.E.2d at

- 19 -

355.

In this case, the trial court was not presented with specific statements implicating defendant or specific antagonistic defenses to support a severance. During the motion to consolidate, defense counsel objected, saying he was not exactly sure what codefendant was going to say or do but thought it might be a situation of inconsistent defenses. Codefendant's counsel explained Bui's defense was that she did not know about the drugs and, if the drugs were present, defendant was the one who placed them in the vehicle.

Codefendant's defenses were not so antagonistic that defendant could not receive a fair trial. "Defenses are antagonistic when each codefendant implicates the other in the offense and professes his own innocence." McCann, 348 Ill. App. 3d at 335, 809 N.E.2d at 217. At the motion to consolidate, the State referenced letters between defendants wherein defendant suggested to Bui that he was going "to take the heat" for the crimes. Thus, Bui would have little reason to accuse defendant if he was planning on taking the blame. The State's evidence indicated defendant gave a false name to Enderli, told Enderli the pills were ecstasy, and told Panizo he was transporting the pills to St. Louis for $5,000. In his closing arguments, defendant's counsel did not try to pin the blame on Bui. Counsel did not even dispute the pills were defendant's. Instead, counsel argued

the State failed to prove the minimum weight and number of pills contained ecstasy as charged in the information. This was not a case, as in <u>Bean</u>, 109 Ill. 2d at 96, 485 N.E.2d at 357, where one defendant accused the other of murder while claiming he was not present at the murder scene. Moreover, this case cannot be said to have become "more of a contest between the defendants than between the State and an individual defendant." <u>Bean</u>, 109 Ill. 2d at 94, 485 N.E.2d at 355. The defenses were not so antagonistic that defendant could not receive a fair trial. Thus, we find no plain error. As we find no error in the consolidation of the trials, we need not address defendant's claim that trial counsel was ineffective.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal.

Affirmed.

McCULLOUGH and STEIGMANN, JJ., concur.