NO. 4-10-0004    Opinion Filed 4/29/11

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,  )   Appeal from
      Plaintiff-Appellee,           )   Circuit Court of
      v.                             )   Livingston County
LINDSEY B. DAVIS,                      )   No. 08CF313
      Defendant-Appellant.          )
                                     )
                                     )   Honorable
                                     )   Robert M. Travers,
                                     )   Judge Presiding.
_____

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Appleton and McCullough concurred in the judgment and opinion.

**OPINION**

Following an August 2009 bench trial, the trial court convicted defendant, Lindsey B. Davis, of obstructing justice (720 ILCS 5/31-4(a) (West 2008)).  Shortly thereafter, the court sentenced defendant to 7 days in jail and 24 months of probation, ordering defendant, in pertinent part, to pay a $200 deoxyribonucleic acid (DNA) fee.

Defendant appeals, arguing that (1) the State failed to prove her guilty beyond a reasonable doubt and (2) the trial court erred by failing to award her $10 against her DNA fee for time she spent in pretrial custody.  Because we agree that the court erred by failing to award her $10 against her DNA fee, we affirm as modified and remand with directions that the court amend its sentencing order to reflect a $10 credit against defendant's DNA fee.

## I. BACKGROUND

### A. The State's Charges and Defendant's Trial

In December 2008, the State charged defendant with (1) one count of obstructing justice and (2) two counts of aiding a fugitive for her involvement in concealing the fact that the father of her children, Jason Bates, was hiding in her house. At an August 2009 bench trial, the parties presented the following evidence.

#### 1. *The State's Case*

The State presented testimony from police officers that they were looking for Bates because they had a warrant for his arrest. Officers arrived at the residence where defendant was staying and knocked on the door. Defendant answered. When asked whether she had seen Bates, defendant responded that she had not and could not remember the last time she had seen him, explaining that only her brother and her children were inside the home.

After speaking privately to her brother (who was also present when the police arrived) a short time later, defendant began crying and said that Bates was in the house. Defendant also conceded that she knew Bates had warrants out for his arrest. Officers then searched the house and found Bates.

#### 2. *Defendant's Case*

Defendant testified that Bates had been at the house earlier that day to see the children, but that she told him to leave because she knew he was wanted by the police. Bates told her that he was going to leave, and she assumed that he had done

- 2 -

so.

Bates testified that he had stopped at the house to see his children and told defendant that he was leaving. However, he decided to stay because it was snowing and cold outside. Bates was in the kitchen for about 15 minutes when he heard knocking at the door. He assumed it was the police. Bates said that he walked from the kitchen, through the living room--where defendant was sitting in a chair--up the stairs, and into the attic. He did not think that defendant saw him.

Defendant explained that she had not seen Bates pass through the living room on the way up the stairs. She acknowledged that although she was sitting in a chair near the front door, she was delayed in getting to the door because of her pregnancy. Defendant explained that she gave the officers consent to search the house for Bates only because they were "drilling her" with questions.

### B. Defendant's Conviction and Sentence

Following defendant's trial, the trial court convicted defendant of obstructing justice and acquitted her of both counts of aiding a fugitive. Shortly thereafter, the court sentenced defendant to 7 days in jail and 24 months of probation, ordering defendant, in pertinent part, to pay a $200 DNA fee.

This appeal followed.

### II. ANALYSIS

Defendant argues that (1) the State failed to prove her guilty beyond a reasonable doubt and (2) the trial court erred by

failing to award her $10 against her DNA fee for time she spent in pretrial custody.  We address defendant's contentions in turn.

### A. Defendant's Claim That the State Failed To Prove Her Guilty Beyond a Reasonable Doubt

Defendant first contends that the State failed to prove her guilty of obstructing justice beyond a reasonable doubt.  We disagree.

#### 1. *The Crime of Obstructing Justice and the Standard of Review*

A person obstructs justice when, with intent to prevent the apprehension of any person, she knowingly "[d]estroys, alters, conceals or disguises physical evidence, plants false evidence, [or] furnishes false information."  720 ILCS 5/31-4(a) (West 2008).

In *People v. Dat Tan Ngo*, 388 Ill. App. 3d 1048, 1052, 904 N.E.2d 98, 102 (2008), this court outlined the standard for reviewing claims challenging the sufficiency of the evidence, as follows:

> "'When reviewing a challenge to the sufficiency of the evidence in a criminal case, the relevant inquiry is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  *People v. Singleton*, 367 Ill. App. 3d 182, 187, 854 N.E.2d 326, 331 (2006).  The

- 4 -

trier of fact has the responsibility to determine the credibility of witnesses and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from that evidence. *People v. Lee*, 213 Ill. 2d 218, 225, 821 N.E.2d 307, 311 (2004). A court of review will not overturn the verdict of the fact finder 'unless the evidence is so unreasonable, improbable[,] or unsatisfactory that it raises a reasonable doubt of defendant's guilt.' *People v. Jones*, 219 Ill. 2d 1, 33, 845 N.E.2d 598, 616 (2006)."

2. *The Evidence Presented in This Case*

In this case, as is often the case, the trier of fact was presented with two versions of the events that led to the charges: (1) the State's version and (2) the defendant's version.

a. The State's Version

The officers arrived at the house. Defendant and Bates saw the police at the door. Defendant, knowing that the police had a warrant for Bates's arrest, stalled for time while Bates ran to hide in the attic. Defendant answered the door and told the officers that Bates had left. After speaking to her brother, who apparently was unwilling to lie for Bates, defendant acknowledged that Bates was there and consented to a search of the house.

### b. Defendant's Version

Bates stopped at the house to see his children. Defendant, knowing the police were looking for Bates, ordered him to leave. Unbeknownst to defendant, Bates went to the back of the house. Shortly thereafter, the police knocked on the door. Bates, suspecting it was the police, dashed through the living room and up the stairs without defendant's noticing. Meanwhile, defendant was delayed in answering the door because of her pregnancy. When asked by the officers whether Bates was in the house, defendant responded that Bates had been there but was gone. The police continued "drilling her" with questions until she finally, in an effort to get them to leave her alone, told them to look through the house. To her surprise, the officers found Bates hiding in the house.

### 3. *The Evidence in the Light Most Favorable to the Prosecution*

Presented with these two contradicting versions of events, the trial court found defendant guilty of obstructing justice. Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found the essential elements of the crime of obstructing justice beyond a reasonable doubt. As previously stated, it is the trier of fact, in this case the trial court, who has the responsibility to determine the credibility of witnesses and how much weight to afford their testimony, resolve conflicts in the evidence, and draw reasonable inferences from that evidence. Here, the court did just that and found that the State's version of events was

- 6 -

more persuasive as to the obstructing-justice count.

As part of her argument, defendant contends that she did not "materially impede" the police investigation and, therefore, did not obstruct justice because she recanted her claim that Bates *was not* in the house shortly after she told the officers that Bates *was* in the house.  To support her position, defendant points to this court's decision in *People v. Gray*, 146 Ill. App. 3d 714, 718, 496 N.E.2d 1269, 1272 (1986), in which we noted the following:

> "There may be, *** based upon the particular facts of each case, a situation where a recantation within a short period of time would permit the trier of fact to find the defendant not guilty of an obstructing-justice charge."

Defendant, citing *People v. Comage*, No. 109495, slip op. at 9 (Ill. Feb. 25, 2011), claims that because a short delay does not "materially impede" police investigations, her delay in telling the truth cannot be used to support her conviction for obstructing justice.  Defendant's interpretation of the supreme court's holding in *Comage* is too expansive.

In *Comage*, the defendant argued that he did not "conceal" contraband as that term is used in the obstructing-justice statute.  The supreme court agreed, reversing the defendant's obstructing-justice conviction where the defendant had thrown contraband over a fence while being pursued by police.  *Comage*,

- 7 -

slip op. at 9.  The police saw the defendant throw the items over the fence and recovered them within 20 seconds.  *Comage*, slip op. at 9.  The court explained that although the contraband was briefly out of the officers' sight, the defendant had not materially impeded their investigation and therefore, the defendant had not obstructed justice.  *Comage*, slip op. at 9-10.

Unlike *Comage*, where the supreme court was addressing what it meant to conceal evidence under the obstructing-justice statute, this case involves knowingly furnishing false information to the police.  When the defendant places evidence *momentarily* out of sight during arrest or pursuit, the defendant has not "concealed" that evidence for purposes of the obstructing-justice statute because such an act does not make recovery of the evidence substantially more difficult or impossible.  See *Comage*, slip op. at 8-9 (comparing the 20-second impediment in that case with the impediment in *People v. Brake*, 336 Ill. App. 3d 464, 783 N.E.2d 1084 (2003), where the defendant had swallowed evidence, which investigators later recovered, in hopes that it would go unrecovered); see also *In re M.F.*, 315 Ill. App. 3d 641, 650, 734 N.E.2d 171, 178 (2000) (throwing "bags of drugs down from the landing and onto the ground in the vicinity of and in view of the police officer who was shining a flashlight on respondent, saw his conduct, and recovered the drugs within seconds of the act" was not "likely to either destroy the evidence or make recovery less likely").  This is in large part due to the fact that the risk that the evidence would be compromised is virtually nonexis-

tent.  Compare *People v. Sumner*, 40 Ill. App. 3d 832, 354 N.E.2d 18 (1976) (affirming the defendant's conviction for obstructing justice where the defendant destroyed physical evidence that had been in her son's bloody clothes).  However, when, as here, the defendant furnishes false information, the potential that the investigation will be compromised is exceedingly high, which is why such a crime may be completed in a very short period of time--indeed, it may be completed at the moment such false information is provided.  See *Gray*, 146 Ill. App. 3d at 717, 496 N.E.2d at 1271 ("The requisite intent in an obstructing-justice charge is established at the time the original false information is given and not at the time of its recantation.").  That is precisely what happened in this case.

Defendant provided the officers with false information about whether Bates was in the house, knowing that they had a warrant for Bates's arrest, in the hopes that he would not be apprehended.  It was not until after defendant spoke to her brother and it apparently became clear that he was going to "spill the beans" that she decided to tell the truth.  Under these facts, we conclude that defendant's actions in that regard impeded the officers' investigation at the time that she misled them by lying.  See Merriam-Webster Collegiate Dictionary 581 (10th ed. 2000) (to "impede" means to "interfere with or slow the progress of").

### B. Defendant's Claim That the Trial Court Erred by Failing To Award Her $10 Against Her DNA Fee

Defendant next argues that the trial court erred by

failing to award her $10 against her DNA fee for time she spent in pretrial custody. The State concedes this point, and we accept the State's concession.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment as modified and remand with directions that the court amend its sentencing order to reflect a $10 credit against defendant's DNA fee. As part of our judgment we award the State its statutory assessment of $50 against defendant as costs of this appeal.

Affirmed as modified and remanded with directions.